[No. 31201. Department One. July 6, 1950.]

SYDNEY A. STEVENS et al., Respondents, v. KING COUNTY, Defendant, THE CITY OF SEATTLE, Appellant.[1]

A. C. Van Soelen and C. C. McCullough, for appellant.

W. Harold Hutchinson and James D. Rolfe, for respondents.

DONWORTH, J.—Respondents, as plaintiffs, brought this action against both the city of Seattle and King county to recover damages to real property caused by the invasion of surface waters. At the conclusion of the plaintiffs' evidence, the trial court, sitting without a jury, sustained a challenge to the sufficiency of the evidence interposed by the county and dismissed the case as to that defendant. The trial then proceeded with the city as sole defendant, and at the conclusion thereof the trial court rendered an oral decision in favor of the plaintiffs. The city's motion for a judgment notwithstanding the oral decision having been denied, the court entered findings of fact and judgment for the plain-

[1] Reported in 220 P. (2d) 318.

tiffs against the city of Seattle, from which the latter has appealed.

Respondents were represented in the trial court and in the perfecting of their appeal by counsel other than those who appeared for them at the time of the argument in this court.

Respondents, husband and wife, are owners of a tract of land in King county, located a few blocks north of the city limits of Seattle at the northwest corner of North 102nd street and Aurora avenue. The property is bounded on the east by Aurora avenue, on the south by North 102nd street, and on the west by an alley which runs north and south parallel to Aurora avenue. About twenty feet north of respondents' property, this alley is intersected by another alley running west to Linden avenue parallel to North 102nd street. Linden avenue, which runs northerly and southerly, is the next street to the west of Aurora avenue and intersects North 102nd street approximately one hundred yards west of respondents' property. With the exception of Aurora avenue, which is a primary state highway, all of these streets and alleys are unpaved county roads.

Respondents' land is improved by a store building located on the southern portion of the property, fronting on Aurora avenue, on the rear or west end of which two separate additions have been built which are used for living quarters and garage and storage purposes. The original store building has a concrete foundation wall, but the two additions rest on concrete blocks. Respondents became tenants of this property in 1942, purchased it in 1944 for five thousand dollars, and began to use the additions as their home on May 9, 1946.

In order to understand the legal problems presented by this case, it is necessary to describe the topography of this area. North 102nd street is a graveled road which has been oiled and compacted. Immediately west of Aurora avenue, this street was graded by filling the traveled portion with gravel to an elevation somewhat higher than that of respondents' property. For a distance of one hundred fifty feet west of Aurora avenue, the street surface is almost flat,

having a very slight crown. The street then begins to rise in its westerly course so that, at its intersection with Linden avenue, its elevation is about twenty-five to thirty feet higher than its elevation adjacent to respondents' property. West of Linden avenue, North 102nd street continues to rise for a considerable distance. The alley, abutting on respondents' property on the west, slopes from north to south. The general slope of the ground and the natural drainage in this vicinity is from the northwest to the southeast in the direction of respondents' property, which forms a sump or pothole.

The greater quantity of surface water arising on the hill to the west of respondents' property travels south on Linden avenue to North 102nd street and east down that street to Aurora avenue. Some surface water flows east down the alley between North 102nd and North 103rd streets, turns into the alley to the west of respondents' property, and runs south toward North 102nd. Except for Aurora avenue, there are no curbs, gutters, or sewers in this area for the purpose of carrying off the surface water.

According to the testimony of respondent Sydney Stevens (who will be referred to as the respondent unless the context indicates otherwise), the surface water had formed a small drainage ditch on the north side of North 102nd street to within one hundred feet of respondents' property, where it then leveled out. Prior to January, 1948, according to his testimony, the surface water, with one exception, had always flowed past his property without entering thereon. The single exception was in 1945, when surface water settled in a puddle on North 102nd street near the front of the store building, but the water disappeared after the county deposited gravel in that spot. In respondents' complaint, it was alleged that there had been repeated floodings of their premises since May 9, 1946, but at the trial respondent testified that this allegation was incorrect.

On January 20, 1948, the appellant, under a franchise from King county, commenced to lay water mains on North 102nd street connecting with an existing water main on

Aurora avenue and running westward. This work was done by a contractor (to whom appellant had awarded this job) with the knowledge and under the supervision of the county engineer.

A trench, approximately two feet wide and forty-four inches deep, was dug by appellant's contractor ten feet north of, and parallel to, the center line of the street and twenty feet from the south edge of respondents' property. The dirt was piled three or four feet high on the south side of the trench. The pipe was laid in eighteen-foot sections, and that portion of the trench was backfilled with earth and water on the same day. Two or three days later, the surface of the street was smoothed off with the blade of a "scoopmobile" (bulldozer with rubber tires). The surface dirt was removed by the contractor and dumped in a place remote from respondents' property.

The alley to the west of respondents' property was not disturbed in any manner, since no lateral pipes were laid. The job was completed in five days on January 24, 1948. Respondent testified that, after the appellant finished its installation, a barrier of dirt about one foot high was left, which remained several days, but the street was leveled before the rain came in February, 1948.

The evidence shows that the job was rather carefully inspected at every stage by both the appellant and King county to make certain that the street was left in the same condition that it was when the job was started. However, no measurements were taken to determine the precise level of the street either before or after the construction. Respondent testified that prior to the time appellant installed the water main the street was not in very good condition and had been neglected by the county. After flooding involved in this action, the county constructed a ditch on the north side of North 102nd street which has since conducted surface water past respondents' property to the sewer in Aurora avenue.

During the actual laying of the water main, very little rain fell, but between the 13th and 18th of February, 1948,

two and thirty-five hundredths inches of rain fell in this area.

On February 24, 1948, respondents filed their claim for damages with the appellant city of Seattle, as well as with the county. This claim not having been acted upon within sixty days from the filing thereof, this action was thereafter commenced. Paragraphs VII, VIII and IX of this claim stated as follows:

"VII

"On February 16, 1948, and prior and subsequent thereto, there was a substantial rainfall, and the surface waters and seepage flowing on said streets and alleys entered upon the claimants' property in great volume.

"VIII

"As a result of the repeated flooding of claimants' premises since May 9, 1946, the soil has been gradually washed away from under the foundation walls of claimants' house and store building, causing the walls thereof to sag, causing distortions and displacements in the structure of said building. Many of the wooden timbers thereof which have been subjected to repeated water damage have become rotten, and a wooden stairway into the basement of the premises at 10207 Aurora has completely rotted out. The ground under the board walk leading from the sidewalk on North 102nd Street to claimants' front door has been washed away, causing the walk to sink. The aforesaid flooding has also damaged claimants' lawn and shrubbery.

"IX

"The aforesaid damage has been gradual and cumulative, increasing with the flooding of claimants' property which has occurred after each rainfall."

The contention of respondents is that the damage complained of was caused by appellant's changing the street contours while making a public improvement which resulted in the surface water flowing down the street being diverted onto their property. They maintain that the judgment can be supported either upon the constitutional provision against damaging private property for a public use (Art. I, § 16) or upon the theory of appellant's negligence. The trial court in its oral decision indicated that respondents' recovery in this action was based on the city's negligence.

On the other hand, appellant contends that there is absolutely no proof that surface water was collected by it and discharged upon respondents' property in a concentrated form, and that there is no proof that the laying of the water main in North 102nd street resulted in any changing of the street contours so as to cause the flooding. Furthermore, it is argued that respondent did nothing to mitigate his damages, although he was aware of the flooding and could have protected his property at nominal expense.

Appellant assigns as error the making of finding of fact No. VII, the failure to sustain appellant's challenge to the sufficiency of respondents' evidence, and the entry of judgment against the city for the sum of five hundred dollars.

Finding No. VII reads as follows:

"At the time defendant City performed such work on North 102nd Street, there was no substantial rainfall. Approximately in the middle of February, 1948, there was a heavy rainfall, with the result that large amounts of surface waters collected on the high ground west of plaintiffs' property, and by virtue of the crown of North 102nd Street were prevented from flowing in their natural southeasterly course, but were conducted by open ditches on Linden Avenue and North 102nd Street to the intersection of said streets and thence east down North 102nd to the flat area immediately adjacent to plaintiffs' property. *By reason of the fact that defendant City had altered the contours of said street, the said surface waters thence flowed upon plaintiffs' property in large volume, causing the foundations of their said buildings to settle, with resulting damage as hereinafter described. But for the construction work done by the defendant City as aforesaid,* the said waters would have continued to flow in said street until reaching Aurora Avenue, whence they would have been conducted away by adequate drainage facilities, *all without damage to plaintiff, as had been formerly the case.*"

We have italicized the portion of this finding which is particularly to be noted in connection with our discussion of the evidence in this case. Primarily, only questions of fact are here involved. North 102nd street, being outside of the city limits of Seattle, was entirely under the jurisdiction and control of King county. Therefore our decision in *Kuhr v.*

*Seattle*, 15 Wn. (2d) 501, 131 P. (2d) 168 (cited by respondent), is not applicable.

■ ·Respondent calls our attention to the well-established rule that findings of the trial court made upon conflicting evidence will not be disturbed by this court unless we can say that such findings are clearly not supported by the weight of the evidence, citing *Michigan Millers Mutual Fire Ins. Co. v. Oregon-Washington R. & N. Co.*, 32 Wn. (2d) 256, 201 P. (2d) 207.

From an examination of the entire record in this case, we are constrained to hold that the weight of the evidence does preponderate against the above-quoted finding. We will briefly state our reasons for so holding.

1. Respondent's claim against the city and county as well as the complaint (both were admitted in evidence) alleged that there had been repeated floodings of the premises since May, 1946, and that the damage had been gradual and cumulative. At the trial, he testified that these statements were erroneous, but his own witness Meroney, a former neighbor, testified in his deposition that there had been repeated floodings since 1946.

2. This finding was made in spite of the trial court's appraisal of respondent's testimony as unsatisfactory. In its oral decision, the trial court commented upon respondent's credibility as follows:

"But I must concede to counsel that the re-reading of this plaintiff's testimony does not convince me that I would be permitted to found my conclusions upon his sometimes rather disturbing testimony. He was quite an opinionated man and at times was almost flippant, not only towards his own counsel, but towards the Court and everybody else; and it was difficult to get from him just exactly what the facts were. He was bound to argue his case, and that made his own counsel's problem somewhat difficult, as it did the rest of us.

"But, apparently, he does not contend and does not claim to the Court that there was any dam left, a dam of loose earth left there at this point, ten feet north of the center of 102d Street at the time when the flood of which he complains actually occurred."

Since respondent's testimony was not considered by the trial court as adequate to support its findings, there was no credible testimony as to the essential facts to support the judgment other than that contained in the deposition of Mr. Meroney (whom the trial court did not see or hear testify). The court characterized Mr. Meroney's testimony as "not always clear and in some cases it is somewhat conflicting." The latter's testimony was outweighed by that produced by appellant.

3. In opposition to these two witnesses, five witnesses were called by appellant, to wit, the King county district foreman, an engineer employed by the county engineer's office, the city's contractor who performed the work, the engineer in charge of the work for the city, and the district engineer for the city. All of them testified that the surface of North 102nd street in the vicinity of respondent's property was in substantially the same condition after the water main was laid as before this work was done. Thus, the weight of the evidence is to the effect that the city did not change the contours of the street.

4. In testifying in rebuttal, respondent admitted that the ridge of earth which he claimed appellant had left in the street after this work was completed was leveled off before the heavy rain came in February, 1948. Respondent's only remaining cause of the flooding was that the city had changed the contours of the street. This is discussed in the preceding paragraph.

5. The preponderance of the evidence does not support the above-quoted finding because respondent did not sustain the burden of proving that the laying of the water main by the city was the proximate cause of the flooding. Disregarding for the moment respondent's allegations that there had been repeated flooding since 1946, his evidence merely showed that the flooding here involved occurred during the first heavy rain subsequent to the completion of the work, whereas no flooding took place just prior to doing the work at a time when there was also considerable rainfall.

Respondent in his brief argues that the photographs taken by him, at the time the flooding occurred, show conclusively that most of the water which damaged his premises came from North 102nd street and not from the alley which forms the westerly boundary of his property. Four of these pictures have been enlarged, and we have given all of them careful consideration. The trial court's comment regarding these pictures in its oral decision was as follows:

"But this water, he [respondent] claims, came, in part, down the alley to the west of his property, and partly from the west. I think he suggested he thinks about five times the quantity from the west and probably one quarter from a point to the west, meeting up with one coming from this property.

"Col. Nelson [appellant's witness] seemed to think that more water had come down the west alley, east-and-west alley. I mean to a point west of the premises, and the area around east and west, probably than any other direction. But I do not think so, and I won't stop to refer to it. I think one of the photographs taken so indicates. You can almost see the heavy burden of water that came down along the north side of 102d Street. The water in there, those pictures show the presence of water there, and convince me further of the actual presence of an unusual quantity of water; and that is confirmed as well by the testimony of both the plaintiff and his neighbor across the way. The neighbor's testimony is not always clear and in some cases it is somewhat conflicting.

"But the conclusive and elemental fact is that there was an excess of water which was not in accordance with the prior experience of the neighborhood within recent years, or at least that is the testimony. And he is also confronted with the fact that it should fall in exact coincidence with the preliminary construction of the water-pipe line and a rather heavy fall of rain, which followed in the succeeding month."

While the direction of the flow of the water is not as clearly discernible from the pictures as might be desired, nevertheless, if we assume respondent's conclusion that the water nearly all flowed onto respondent's property from North 102nd street to be correct, there would still not be sufficient evidence to support finding No. VII as to the cause

of the flooding. The burden was upon respondent to prove that the city changed the contours of North 102nd street and that this change caused the flooding. The most favorable view of the evidence from respondent's standpoint amounts to no more than a mere possibility that the flooding might have been caused in this manner. This is insufficient to support the trial court's finding.

In *Home Ins. Co. v. Northern Pacific R. Co.*, 18 Wn. (2d) 798, 140 P. (2d) 507, we had occasion to consider a rule of law which is applicable to the present case. We there said:

"The rule is well established that the existence of a fact or facts cannot rest in guess, speculation, or conjecture. It is also the rule that the one having the affirmative of an issue does not have to make proof to an absolute certainty. It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the thing in question, such as the occurrence of a fire, happened in such a way as to fix liability upon the person charged therewith than it is that it happened in a way for which a person charged would not be liable. In applying the circumstantial evidence submitted to prove a fact, the trier of fact must recognize the distinction between that which is mere conjecture and what is a reasonable inference."

More recently, in *Gardner v. Seymour*, 27 Wn. (2d) 802, 180 P. (2d) 564, the same principle was stated briefly as follows:

"We have frequently said that, if there is nothing more tangible to proceed upon than two or more conjectural theories under one or more of which a defendant would be liable and under one or more of which a plaintiff would not be entitled to recover, a jury will not be permitted to conjecture how the accident occurred."

This rule is equally applicable whether the trier of fact be a jury or a court sitting without a jury.

Since we find from the record that there is not sufficient evidence to sustain the trial court's finding that the city changed the contour of North 102nd street in such a manner as to be the proximate cause of the flooding, the respond-

ents are not entitled to any recovery as against the appellant upon either the theory of negligence or upon the theory of the city's damaging of their property for a public use. To recover upon the latter theory, there must be a showing that the acts of appellant resulted in the damaging of respondents' property for such purpose. The evidence applicable to this theory is insufficient to bring this case within the scope of our decision in *Whiteside v. Benton County*, 114 Wash. 463, 195 Pac. 519, and other similar cases cited by respondent.

The judgment is reversed, with directions to dismiss the action.

SCHWELLENBACH, HILL, GRADY, and HAMLEY, JJ., concur.