[No. 42394. En Banc. February 1, 1973.]

THE STATE OF WASHINGTON, on the Relation of Slade Gorton, Appellant, v. THE PORT OF WALLA WALLA et al., Respondents.

Slade Gorton, Attorney General, and Rodney Carrier, Assistant, for appellant.

Williams & Golden, W. E. Evenson, and Robert J. Williams, for respondent Port of Walla Walla.

Leavy, Taber, Schultz & Bergdahl, by D. E. Taber, for respondent Atlantic Richfield Hanford Company, Inc.

Rex M. Walker (of Davis, Wright, Todd, Riese & Jones), for respondents Loney, Coates and Nowogroski.

*Minnick & Hahner,* for respondents Wolf, Forbes and Roope.

UTTER, J.—This case involves the questioned legality of an expenditure by the Port of Walla Walla which was used to acquire a parcel of land. The State Auditor, pursuant to his statutory mandate to examine the financial affairs of every public office and officer, conducted an examination of the actions of the Port of Walla Walla and challenged the legality of this expenditure. The Attorney General, pursuant to RCW 43.09.260, then instituted this legal action. Trial to the court was held, judgment was entered for the Port of Walla Walla and title to the questioned property was quieted in the port.

The Attorney General's assignments of error involve three basic issues: (1) Whether there is evidence in the record to support the trial court's findings that the port did not make a gift or loan of its money or credit in violation of article 8, section 7 of the Washington State Constitution and whether the expenditure for the parcel of land was authorized by present statutory authority governing port districts; (2) whether article 8, section 8 of the Washington State Constitution and RCW 53.36.120, which require the adoption of specific budget items prior to expenditures for industrial development, were violated by the port's acquisition of a parcel of land; and (3) whether RCW 53.20.010, requiring amendment of a comprehensive plan prior to expenditures for improvements, was violated by the port's acquisition of a particular parcel of land. We find substantial evidence to support the trial court's findings of fact and hold that, under the existing statutory authority, the port district acted properly.

The transactions in the case involve the Port of Walla Walla; Sun-Glo Producers, Inc., a Washington corporation involved in farming operations; Atlantic Richfield Hanford Company, Inc. (ARCHO); Columbia Limited Partnership, a general land-owning partnership; Mr. and Mrs. Louis Jaussaud, owners of a sheep ranch in Walla Walla County;

and a partnership known as Wolf, Wolf, Forbes and Roope, owners of a wheat ranch in Walla Walla County.

On May 25, 1967, Sun-Glo took an option to purchase the entire Jaussaud ranch. The option involved an immediate payment of $10,000 with an additional payment of $10,000 on August 15, which payment would extend the option to purchase until January 1, 1968. At that time a downpayment of $80,000 was required to exercise the option. Sun-Glo did make the first two $10,000 payments but failed to exercise the option to purchase on January 1, 1968.

Shortly after the Sun-Glo option was obtained, the Port of Walla Walla received an option from Sun-Glo covering approximately 250 acres of the Jaussaud ranch. On the day the option was obtained, ARCHO was granted an option by the port to purchase 250 acres of the property optioned by the port. On December 13, 1967, the Port of Walla Walla amended the terms of their option with ARCHO, agreeing to sell their property for $65,000. On December 20, 1967, the port paid $147,337.16 into escrow to assert its option to purchase from Sun-Glo. On the same day, ARCHO paid $64,500 into escrow by means of a check made out to the port asserting its option from the port. Before title could be transferred, however, on December 22, 1967, an independent transaction occurred between the Jaussauds and Wolf, Wolf, Forbes and Roope. In this transaction, the Jaussauds deeded that portion of their land which was covered by the option to the Port of Walla Walla to the Wolf group and took title to land owned by them in exchange. The Wolf group then executed deeds to parcels of land to the Port of Walla Walla (Parcel A) and to ARCHO (Parcel B). The remaining land of the Jaussauds was conveyed to Columbia Limited Partnership on December 28, 1967.

The contention of the state is that the port made a gift or loan of its money or credit based upon what it asserts to be the conclusively established fact that the Port of Walla Walla advanced $80,000 to complete the downpayment to the Jaussauds and that it contributed $32,137.16 toward the

total amount received by the Jaussauds for Parcel B, the parcel purchased by ARCHO.

The state's contention is premised upon certain correspondence exchanged between representatives of the port and a potential user of Parcel A, purchased by the port. It contends the true value of the parcel purchased by ARCHO was $97,137.16 and inasmuch as ARCHO paid only $65,000 for the parcel, the difference was to be found in the amount the port paid for its parcel which was not reflected in the true value of that land.

As in all factual disputes, however, there are at least two sides. The trial court specifically found in finding of fact No. 9 that "the purchase price paid by the PORT OF WALLA WALLA for Parcel A . . . is and was a fair and reasonable price; that the purchase price paid by ATLANTIC RICHFIELD HANFORD Co. for Parcel B . . . is and was a fair and reasonable price."

None of the options from Jaussaud to Sun-Glo Producers, Inc. to the Port of Walla Walla or the option from the port to ARCHO were found to have been exercised, and the court instead found that the port and ARCHO purchased their property on December 29, 1967, directly from the Wolf group.

There is testimony in the record which substantiates the theory of the state but the trier of fact need not and did not accept this evidence as evidence of value. *Plancich v. Williamson*, 57 Wn.2d 367, 370-73, 357 P.2d 693, 92 A.L.R.2d 559 (1960). An examination of the documentary evidence submitted by the state could well have sustained findings of fact favorable to the state's contentions. The trial court, however, on conflicting testimony, did not agree with the theory presented by the state and there is substantial evidence in the record to support the findings of the trial court. *Hernandez v. Western Farmers Ass'n*, 76 Wn.2d 422, 425, 456 P.2d 1020 (1969); *Kuster v. Gould Nat'l Batteries, Inc.*, 71 Wn.2d 474, 476, 429 P.2d 220 (1967); *Johnson v. Ramstad*, 68 Wn.2d 971, 413 P.2d 348 (1966).

Without going at length into the supporting testimony

substantiating the trial court findings, the record supports the trial court's conclusion that the Jaussauds-Sun-Glo option was never exercised, and that the conditions and figures for the property involved, therefore, had no relevance to the final purchase price and were rendered meaningless. As stated by the trial court judge in his oral opinion, with the disappearance of the earlier options there was "a whole new ball game." The record does not compel a conclusion that the Port of Walla Walla, in acquiring Parcel A, paid more for the land than its actual fair market value.

■■ No testimony by the owners of the property supporting the state's valuation of the property was obtained. *Cunningham v. Tieton*, 60 Wn.2d 434, 374 P.2d 375 (1962). The acquisition by ARCHO of property adjoining that purchased by the port with a preceding commitment to build a cattle feeding and processing plant valued at between six and seven million dollars could well have, in addition to other testimony before the court, justified the price paid by the port for the parcel of land. The burden of proof, however, was not on the port to justify its purchase price, but rather on the state to establish that the port did not receive value for the price paid for the land. *Emerick v. Bush*, 36 Wn.2d 759, 762-63, 220 P.2d 340 (1950). The trial court not only found the state failed to meet its burden of proof, but affirmatively found that, without relying on guess, speculation, or conjecture, the port did receive value for the land. *See Stevens v. King County*, 36 Wn.2d 738, 220 P.2d 318 (1950). There is substantial evidence in the record to support this finding, and there was, therefore, no gift or loan of the port's money or credit in violation of article 8, section 7 of the constitution.

Appellant next contends the port was required to amend its comprehensive plan prior to the acquisition of Parcel A. This contention is premised on their interpretation of the scope of RCW 53.20.010:

> Adoption of harbor improvement plan. It shall be the duty of the port commission of any port district, before creating any improvements hereunder, to adopt a com-

prehensive scheme of harbor improvement in such port district, after a public hearing thereon . . . and no expenditure for the carrying on of· any harbor improvements shall be made by said port commission . . . 'unless and until such comprehensive scheme of harbor improvement has been so officially adopted by the port commission.

It is the state's contention that the port's acquisition of Parcel A was ultra vires and void because the purchase was made without its inclusion in the comprehensive plan prior to the transaction, and the subsequent ratification by the port did not correct the error.

■ We believe the purchase of unimproved land is not a "harbor improvement" within the meaning of chapter 53.20 and ports are authorized to acquire land for cash without any comprehensive plan under RCW 53.08.010. That statute provides:

Acquisition of property—Levy of assessments. A port district may acquire by purchase, for cash . . . all lands, property, property rights, leases, or easements necessary for its purposes . . .

RCW 53.08.040 provides:

Improvement of lands for industrial and commercial purposes—Providing sewer and water utilities—Providing pollution control facilities. A district may improve its lands by dredging, filling, bulkheading, providing waterways or otherwise developing such lands for sale or lease for industrial and commercial purposes.

Chapter 53.08 thereby distinguishes, in its own terms, between the purchase of land and the developing of land for sale or lease for industrial or commercial purposes. The two concepts are not synonymous or interchangeable.

The cases cited by appellant, with one exception, do not deal with an interpretation of RCW 53.08.010. In *Port of Everett v. Everett Improvement Co.*, 124 Wash. 486, 214 P. 1064 (1923), the port commissioners authorized acquisition of certain real property, within their district, by condemnation. A comprehensive plan had been adopted prior to the resolution authorizing the condemnation, but that compre-

hensive plan was extremely general in nature and did not contain a map or detailed description of the intended projects. The resolution only declared that the port commission proposed to exercise at some indeterminate time in the future the general powers the statute conferred on the port district, and then described the land of Everett Improvement Company as being necessary for that plan. The court stated, at page 493:

it may be seriously questioned whether the legislature can grant to a municipal corporation the power to acquire by condemnation property which the municipality desires merely because it believes that at some time in the future it may have use for it . . . it is impossible for the court or anyone to know whether all or what particular part of the property here sought to be condemned is necessary for the use of the port district, and the right of condemnation must fail for this reason.

This case is not in point. It was apparent that the acquisition of the raw land in the *Everett* case was by condemnation, not purchase, and was part of a general scheme of specific harbor improvements of the type contemplated in RCW 53.20.010.

The legislature has clearly stated in RCW 53.20.010 that if harbor improvements are to be created, a comprehensive plan must first be adopted. However, the language of the statute indicates it is anticipated by use of the word "improvements" that some construction or physical work be done in addition to the acquisition of property. RCW 53.20.030 provides: "No improvements shall be acquired or constructed, by the port district, unless such improvements shall, when completed, be the property of such port district . . ." The use of the term "when completed" in this subsection of the chapter, we believe, clarifies the intent of the legislature that harbor improvements relate to something more than the acquisition of raw land. Such an interpretation of the statutory language gives effect to all the language used (*Danley v. Cooper,* 62 Wn.2d 179, 381 P.2d 747 (1963)), providing for harmonious construction of all the statutory provisions. *Hansen v. Harris,* 123 Wash. 109,

212 P. 171 (1923). The testimony does not disclose the Port of Walla Walla intended to do more than acquire land. It was, therefore, unnecessary to have the port adopt a comprehensive plan prior to its purchase under the provisions of RCW 53.08.010.

Appellant's final argument is that article 8, section 8 of the Washington State Constitution and RCW 53.36.120, requiring adoption of specific budget items prior to expenditures for industrial development, were violated by the port's acquisition of Parcel A. Article 8, section 8 provides:

> The use of public funds by port districts in such manner as may be prescribed by the legislature for industrial development or trade promotion and promotional hosting shall be deemed a public use for a public purpose, and shall not be deemed a gift within the provisions of section 7 of this Article.

This constitutional provision was enacted in 1966 by the voters subsequent to a decision by this court in *Hogue v. Port of Seattle*, 54 Wn.2d 799, 837, 341 P.2d 171 (1959), which held the industrial development acts unconstitutional insofar as they "purport to authorize the condemnation of such land for a private purpose, to wit, the development and sale thereof to private entities for use as industrial sites."

Subsequent to the passage of the constitutional amendment, RCW 53.36.120 was passed, which provides:

> Under the authority of Article VIII, section 8, of the state Constitution, port district expenditures for industrial development, trade promotion or promotional hosting shall be pursuant to specific budget items as approved by the port commission at the annual public hearings on the port district budget.

Appellant urges inasmuch as the Port of Walla Walla's budget for 1967 did not provide for funds for the purchase of Parcel A, the respondent port did not comply with the requirements of RCW 53.36.120 and article 8, section 8 of the Washington State Constitution, and consequently the purchase of Parcel A is void. The port contends, first, that its purchase of the land was pursuant to RCW 53.08.010

which authorizes the port to acquire land for cash and second, that the acquisition of the land was not for "industrial development" which would bring it within the express terms of RCW 53.36.120. We agree.

The trial court did not affirmatively find the purchase of the land was for "industrial development" and specifically refused to enter plaintiffs' proposed finding of fact No. 13 that: "The Port of Walla Walla was purchasing Parcel A under its presumed authority to make such expenditures for industrial development." We have examined the record and cannot say the testimony establishes, as a matter of law, the expenditure was for industrial development. On the contrary, there is testimony both from the president of the commissioners of the Walla Walla Port District, at the time the transactions occurred, and their attorney that there were several purposes for which the land was purchased, among them being use of the property as a pumping station site for irrigated farming or as a potential reservoir site.

RCW 53.35.010 governs the budgeting requirements for the port in purchases of this nature and requires that:

> On or before the 15th day of September of each year each port commission shall prepare a preliminary budget of the port district for the ensuing fiscal year showing the estimated expenditures and the anticipated available funds from which all expenditures are to be paid.

These requirements were met. The record reveals there was an estimated expenditure in the 1967 budget for land acquisition and that, although it was less than the sum expended by the port for Parcel A, there were sufficient funds in the accounts of the port to honor this expenditure which was paid by the port treasurer. There is no requirement under this statute for a specific budget item as required under RCW 53.36.120.

Judgment affirmed.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, and WRIGHT, JJ., concur.

Petition for rehearing denied May 18, 1973.