[No. 50078-9. En Banc. August 9, 1984.]

THE STATE OF WASHINGTON, *on the Relation of Robert V. Graham, as State Auditor,* ET AL, *Respondents,* v. SAN JUAN COUNTY, *Appellant.*

*E. H. Knapp, Jr., Prosecuting Attorney,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *James K. Pharris, Assistant,* for respondent State.

*Clinton, Fleck, Glein & Linville,* by *Kirk Portmann,* for respondent San Juan County Home Builders Association.

PEARSON, J.—San Juan County appeals from a summary

judgment granted in favor of the State of Washington. The issue is whether the County may exempt "owner-built residences" from most of the requirements of the State Building Code. The trial court held that the exemption was contrary to the purposes of the Code, and declared the San Juan County ordinance void. The Court of Appeals certified the case to this court. We reverse.

I

In 1974, the Legislature passed the State Building Code Act, codified at RCW 19.27. The Code adopted by reference several nationally recognized uniform codes, including the Uniform Building Code, the Uniform Mechanical Code, the Uniform Fire Code, and the Uniform Plumbing Code. *See* RCW 19.27.030(1), (2), (3), and (4). The stated purpose of the Code is to "provide building codes throughout the state" and to "require minimum performance standards and requirements for construction and construction materials." RCW 19.27.020(2). Accordingly, the Code supersedes all county, city or town building codes, with several exceptions. One exception is RCW 19.27.060(3), which states in part:

> The governing body of each city, town or county may limit the application of any rule or regulation or portion of the state building code to include or exclude specified classes or types of buildings or structures, according to use, occupancy, or such other distinctions as may make differentiation or separate classification or regulation necessary, proper, or desirable . . .

In 1975, the San Juan County Board of Commissioners, having had no prior building code, adopted the State Building Code as the local building code. San Juan County Resolution 224–1975. After 2 years under the Code, the Commissioners determined that the County, which is composed of over 100 islands, did not have the resources to enforce all the provisions of the Code. The Commissioners also determined that "owner-built residences" constitute a distinct and separate class, and that "no legitimate governmental purpose is justified by the application of the [Uni-

form Building Code] to owner–built residences in view of the cost and consequences of such enforcement." San Juan County Code 15.04.151(1). The Commissioners therefore repealed their version of the State Building Code as it applied to owner–built residences, and adopted in its stead section 15.04.151, the provision at issue in this case.

Under the ordinance, an owner–built residence is subject to some inspection requirements, but need not meet most of the State Building Code requirements. The ordinance defines "owner–built" as those residences built by the owner and that person's immediate family, working without compensation. It excludes residences intended to be sold or rented to other persons. Section 15.04.151(2). No work may be performed by general or specialty contractors, except that the owner–builder may employ licensed electricians or plumbers, whose work must comply with the State Building Code. Section 15.04.151(8). The owner–builder is also required to obtain a state electrical permit, a sewage disposal permit, and a plumbing permit. Finally, the ordinance prohibits the owner–builder from selling or renting the residence within 5 years of completion, unless the building inspector first determines that the structure does not constitute "a real and present danger" to the health and safety of the occupants. Apparently no inspection is required if the residence is sold more than 5 years after completion.

After this ordinance was adopted, the State Auditor conducted an investigation and concluded that the ordinance violated RCW 19.27. The Attorney General sued, naming the State of Washington as plaintiff and the State Auditor as relator. At some point, the San Juan County Home Builders Association (intervenors) was allowed to intervene. Intervenors submitted a pleading labeled a "reply" to the County's answer, in which intervenors "affirmed" the allegations in the State's complaint.

On cross motions for summary judgment, the trial court found that the ordinance was not reasonably related to the purposes of the State Code, that is, to promote the health, safety, and welfare of the users and occupants of buildings.

The court also found that because the ordinance was not rationally related to those purposes, it violated the equal protection clauses of the federal and state constitutions.

## II

A preliminary issue is whether the plaintiffs have standing to bring this action. The County contends that the Auditor has no authority to bring this suit as relator on behalf of the State. Although in the past the Auditor has been named as relator in cases before this court, *see State ex rel. Graham v. Northshore Sch. Dist. 417,* 99 Wn.2d 232, 662 P.2d 38 (1983), we agree with the County that the Auditor does not have such authority. No statute authorizes the Auditor to bring suits on behalf of the State. *See* RCW 43.09.050, concerning the general duties of an auditor.

The State responds that this action was actually brought by the Attorney General on behalf of the State pursuant to RCW 43.09.260. That statute gives the Auditor the power to examine the financial affairs of every taxing district, public office, and officer. The statute provides, in part:

> On every such examination, inquiry shall be made as to the financial condition and resources of the taxing district; *whether the Constitution and laws of the state, the ordinances and orders of the taxing district, and the requirements of the division of municipal corporations have been properly complied with*; and into the methods and accuracy of the accounts and reports.
> . . .
> A report of such examination shall be made . . . If any such report discloses malfeasance, misfeasance, or nonfeasance in office on the part of any public officer or employee . . . the attorney general shall institute, in the proper county, such legal action as is proper . . .

(Italics ours.) According to the Attorney General, this statute is not limited to financial matters, but rather empowers the Auditor to determine whether local communities are in compliance with all state laws.

The Attorney General's argument is not supported by the applicable constitutional and statutory provisions.

First, article 3, section 20 states that "The auditor shall be auditor of public accounts, and shall have such powers and perform such duties in connection therewith as may be prescribed by law." Although there is virtually no legislative history on this provision, *see Yelle v. Bishop,* 55 Wn.2d 286, 294–95, 347 P.2d 1081 (1959), the use of the words "auditor" and "public accounts" make it clear that the Auditor is intended to be the financial officer of the State. The constitution, in other words, does not empower the Auditor to investigate nonfinancial matters of local governments.

Second, the enabling statute passed pursuant to this constitutional provision also does not grant the Auditor the authority he seeks. The Auditor's broad statutory responsibility is to ensure the financial integrity of public agencies in the assessment, collection, and expenditure of public funds. *See generally* RCW 43.09. The statute at issue here, RCW 43.09.260, is the mechanism by which the Auditor examines the *financial* affairs of public officers and agencies. The inquiry into compliance with state law is merely one aspect of these financial examinations. *See* RCW 43.09.260 ("On every such examination, inquiry shall be made as to . . . whether the Constitution and laws of the state . . . have been properly complied with . . ."). In every reported case under this statute, the Auditor was investigating the financial affairs of public officers and agencies. *See, e.g., Scott Paper Co. v. Anacortes,* 90 Wn.2d 19, 578 P.2d 1292 (1978) (state counterclaim challenging city's water rate contracts); *State ex rel. Gorton v. Port of Walla Walla,* 81 Wn.2d 872, 505 P.2d 796 (1973) (challenging port's expenditures and budget practices); *State ex rel. O'Connell v. Port of Seattle,* 65 Wn.2d 801, 399 P.2d 623 (1965) (challenging port expenditures); *State v. Miller,* 32 Wn.2d 149, 201 P.2d 136 (1948) (challenging county clerk's expenditures); *State v. United Pac. Ins. Co.,* 26 Wn. App. 68, 612 P.2d 809 (1980) (challenging school district official's allegedly false payroll warrants); *State ex rel. O'Connell v. PUD 1,* 2 Wn. App. 366, 469 P.2d 922 (1970) (challenging

PUD's sales program), *rev'd,* 79 Wn.2d 237, 484 P.2d 393 (1971).

The most recent case is *Northshore School District.* In that case, the Auditor challenged the school district's authority to enter into certain employment contracts. In upholding the Auditor's standing to sue, this court noted that the Auditor had an interest in the contracts because "public monies are involved." 99 Wn.2d at 242. The court also noted that the Auditor's suit in that case was a result of his examination of the school district's "financial affairs," pursuant to RCW 43.09.260.

In this case, the Auditor's inquiry was in no way related to an examination of San Juan County's financial affairs. We hold that RCW 43.09.260 is limited to financial investigations. It does not authorize the Auditor to act as a roving investigator to determine whether local communities are in compliance with state law on nonfinancial matters such as local building codes. Because this case does not involve the assessment, collection, or expenditure of public funds, the Attorney General was without standing to bring this suit pursuant to RCW 43.09.260.

██ San Juan County also argues that the intervenors, San Juan County Home Builders Association, are not proper parties to this suit. The County argues that because the intervenors' pleading was labeled a "reply" to the County's answer, the intervenors have not filed a proper pleading as required by CR 24(c), and therefore should not have been allowed to intervene. This argument is without merit for two reasons. First, from all that appears in the record, the County did not oppose the intervention. "Issues not raised before the trial court will not be considered for the first time on appeal." *Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 369, 617 P.2d 704 (1980). Second, although the pleading was labeled a reply, it "support[ed] and affirm[ed]" the allegations in the State's complaint. We believe this was sufficient to give the County notice of the intervenors' claims. *See Spring Constr. Co. v. Harris,* 614 F.2d 374, 376–77 (4th Cir. 1980) (where "the moving party

fails to comply strictly with the requirements of Rule 24(c), the proper approach is to disregard non–prejudicial technical defects"). *See also Hockley v. Hargitt,* 82 Wn.2d 337, 510 P.2d 1123 (1973) (where defendant is not prejudiced by the intervenor's noncompliance with CR 24(c), dismissal of intervenor is not required). Although it would have been preferable for the intervenors to comply with the procedures set forth in CR 24(c), their failure to do so did not prejudice the County and does not warrant dismissal. The intervenors are residents of and property owners in San Juan County and have a direct interest in the outcome of this case. The trial court did not abuse its discretion in allowing the intervention.

## III

The main issue in this case is whether the County may exempt a large class of buildings from the State Building Code. The difficulty is that the Code has two conflicting provisions: one that appears to prohibit the County's amendments, and one that appears to allow them. Resolution of this case depends on which provision is given controlling weight.

The first provision, RCW 19.27.040, states that a county's amended code is valid only if it meets the "minimum standards" in the State Code. The statute provides:

> [T]he governing body of each city, town or county is authorized to amend the state building code as it applies within its jurisdiction in all such respects *as shall be not less than the minimum performance standards and objectives enumerated in RCW 19.27.020,* including, the authority to adopt any subsequent revisions to the codes in RCW 19.27.030(1), (2), (3), (4), (5), and (6) . . .

(Italics ours.) On the other hand, another provision seems to authorize a county to amend the Code as it deems necessary or desirable, regardless of whether such amendments meet the Code's minimum standards. RCW 19.27.060 states:

> (1) *Except as permitted or provided otherwise under* the provisions of RCW 19.27.040 and *subsections (3),* (4),

(5), and (6) of this section, *the state building code supersedes all county, city or town building regulations containing less than the minimum performance standards* and objectives contained in the state building code.

. . .

(3) The governing body of each city, town or county may limit the application of any rule or regulation or portion of the state building code to include or exclude specified classes or types of buildings or structures, according to use, occupancy, or such other distinctions as may make differentiation or separate classification or regulation necessary, proper, or desirable . . .

(Italics ours.) As the trial court noted in its memorandum opinion, a literal reading of this latter statute would allow the County's amendments. The statute states that a county must meet the minimum requirements, *except* as permitted under subsection (3).

If the County's owner–builder ordinance met the State Code's "minimum performance standards and objectives," then it would be permitted under both RCW 19.27.040 and .060. All parties agree, however, that the ordinance does not meet these minimum requirements. Although the owner-builder is required to obtain permits for some of the work, *i.e.*, sewage disposal, electricity, and plumbing, he or she need not comply with numerous other requirements of the State Code (*e.g.*, the Uniform Mechanical Code, RCW 19.27.030(2), and the thermal design regulations, RCW 19.27.200).

Having determined that the county ordinance does not meet the minimum state standards, we must decide which statute should be controlling: RCW 19.27.040, which requires the county to meet the minimum, or RCW 19.27-.060, which does not.

The trial court reasoned that to give full effect to RCW 19.27.060 would be inconsistent with the broad goals of RCW 19.27, which include "promot[ing] the health, safety and welfare of the occupants or users of buildings and structures and the general public." *See* RCW 19.27.020(1). The court therefore interpreted RCW 19.27.060 as allowing

only amendments which met the minimum requirements of the State Building Code. Because the County's ordinance falls below that standard, the court ruled that the ordinance was invalid. The County argues that this holding is contrary to the language of RCW 19.27.060(3), which, according to the County, unambiguously allows a county to alter or limit portions of the State Building Code as may be necessary or desirable, given local conditions.

    ▣▣ It is a close case, but we believe the County is correct. First, nothing in RCW 19.27.060 requires a county's amendments to be consistent with the goals and purposes listed in RCW 19.27.020. To the contrary, the statute states that if the county amendments fall within the terms of subsection (3), the county *need not* meet "the minimum performance standards and objectives contained in the state building code." RCW 19.27.060(1). Thus, while the trial court was correct in finding that San Juan County's ordinance is inconsistent with the State Code's purposes, the statute itself allows this inconsistency.

    Second, statutory rules of construction support the County's argument. RCW 19.27.040 and .060 are in conflict with each other, but .060 is more clearly worded, more specific, and latest in order. In such a case, the rule is that "as between two conflicting parts of a statute, that part latest in order of position will prevail, where the first part is not more clear and explicit than the last part." *Schneider v. Forcier,* 67 Wn.2d 161, 164, 406 P.2d 935 (1965). *See also Williams v. Pierce Cy.,* 13 Wn. App. 755, 537 P.2d 856 (1975), which holds that in the event of conflicting provisions, the more clearly expressed will control.

    Finally, the legislative history indicates that RCW 19.27-.060 was intended to allow counties to make broad exemptions from the State Building Code. The Code as originally proposed did not contain the section which is now RCW 19.27.060. Laws of 1974, 1st Ex. Sess., ch. 96 (Senate Bill 2634). The bill was amended to allow for local variations from the statewide law. During the Senate debates on the amendment, the following exchange occurred:

Senator Woody: "In section 6, subsection (3) on page 3, it permits the cities, towns or counties to include or exclude specified classes or types of buildings, structures, etc., according to use or occupancy. *Does this not really permit a vast exception possible to this act?*"

Senator Clarke: "*Yes, Senator, I believe it does,* but this was one of the necessary compromises, in reality, to gain the support of areas such as Seattle because they do have a more sophisticated problem. It is true that the wording of the bill would seem to give them very wide authority as to using their discretion in making exemptions. On the other hand, I certainly think the intent is that they must be able to set forth some logical basis and reason for such exemptions. In short, I would rather agree with you that to an extent that emasculates the bill insofar as Seattle is concerned, and other cities of similar stature. But bills of this nature, quite often we have to proceed in steps on a compromise basis rather than take the whole thing at once. And in my opinion that is the reason for the inclusion of that wording."

(Italics ours.) Senate Journal, 43d Legislature, 1st Ex. Sess. (1974), at 196. This discussion indicates that under subsection (3) a county may create a "vast exception" to the act under which certain classifications need not meet the State Code's minimum standards. It may be, as the intervenors argue, that subsection (3) was meant to allow only such variation as does not fall below the Code's minimum standards. For example, at one point in the Senate debate, Senator Clarke stated that "The exceptions really have to do with cities such as Seattle where they wish to impose ordinances that may for reasons of their particular industrial situation require difference in handling." Senate Journal, 43d Legislature, 1st Ex. Sess. (1974), at 196. The language of the amendment finally adopted, however, allows counties to vary their codes in whatever way they deem "necessary, proper, or desirable". RCW 19.27.060(3).

We therefore give controlling weight to RCW 19.27.060, and hold that a county need not meet the State Building Code's minimum standards if the county's amendments are "necessary, proper or desirable." We further hold that San

Juan County's "owner–builder" classification meets this test. San Juan County has over 100 islands, with ferry service to only 4. The County does not have sufficient funds to adequately enforce all the provisions of the State Building Code. The ordinance exempts only those residences built and occupied by the owner–builder. All other structures—houses built for sale, rental units, restaurants, hotels, retail stores—must meet the full range of State Building Code requirements. Given the exceedingly broad language of RCW 19.27.060(3), we believe San Juan County's owner–builder ordinance is "proper or desirable" under the circumstances.

We also disagree with the trial court's conclusion that the San Juan County ordinance violates the equal protection clauses of the state and federal constitutions. The party challenging a legislative classification bears a heavy burden of proving a classification to be unreasonable. *Haddenham v. State*, 87 Wn.2d 145, 150, 550 P.2d 9 (1976). This court will uphold such a classification where reasonable grounds exist to support the classification's distinction between those persons within and without the class. *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs*, 92 Wn.2d 831, 836, 601 P.2d 936 (1979), *appeal dismissed*, 446 U.S. 979 (1980). In this case, the San Juan County Board of Commissioners could rationally conclude that a home built by the owner–resident for his or her exclusive personal use warranted less governmental regulation than a commercially built structure.

We therefore hold that San Juan County's owner–builder ordinance is valid. The trial court is reversed.

WILLIAMS, C.J., BRACHTENBACH, DOLLIVER, and DIMMICK, JJ., and DORAN, J. Pro Tem., concur.

DORE, J. (dissenting)—Three sections of the State Building Code Act, RCW 19.27, address the extent of a local governing body's authority to regulate local building standards. RCW 19.27.040 provides in part:

> On and after January 1, 1975, the governing body of each city, town or county is authorized to amend the state building code as it applies within its jurisdiction *in all such respects as shall be not less than the minimum performance standards and objectives enumerated in RCW 19.27.020, . . .*

(Italics mine.) The minimum performance standards and objectives recited in RCW 19.27.020 include:

> (1) To promote the health, safety and welfare of the occupants or users of buildings and structures and the general public.
>
> (2) To require minimum performance standards and requirements for construction and construction materials, consistent with accepted standards of engineering, fire and life safety.
>
> (3) To require standards and requirements in terms of performance and nationally accepted standards.
>
> (4) To permit the use of modern technical methods, devices and improvements.
>
> (5) To eliminate restrictive, obsolete, conflicting, duplicating and unnecessary regulations and require-ments which could unnecessarily increase construction costs or retard the use of new materials and methods of installation or provide unwarranted preferential treat-ment to types or classes of materials or products or methods of construction.
>
> (6) To provide for standards and specifications for making buildings and facilities accessible to and usable by physically handicapped persons.
>
> (7) To consolidate within each authorized enforcement jurisdiction, the administration and enforcement of building codes.

Finally, subsections (1) and (3) of RCW 19.27.060 provide as follows:

> (1) Except as permitted or provided otherwise under the provisions of RCW 19.27.040 and subsections (3) [and] (4), . . . of this section, *the state building code supersedes all county,* city or town *building regulations containing less than the minimum performance stand-ards and objectives contained in the state building code.*
>
> . . .
>
> (3) The governing body of each city, town or county may limit the application of any *rule* or *regulation* or

*portion* of the state building code to include or exclude specified *classes or types* of buildings or structures, *according to use,* occupancy, or such other distinctions as may make differentiation or separate classification or regulation necessary, proper, or desirable *. . .*

(Italics mine.)

The majority cites subsection (3) of RCW 19.27.060 as the statutory authority to adopt the scheme of owner–builder permits which is the subject of this action. Certainly there is no other provision of RCW 19.27 which could be read to permit a county to establish different standards for owner–built residences than for other buildings. And even though subsection (3) of RCW 19.27.060, *read in isolation,* seems to authorize counties to classify buildings and exclude classes of buildings from the State Building Code Act, a reading of that subsection in the context of the whole statute shows that the Legislature did not grant such broad authority.

### LIMITED AUTHORITY

The authority given to local governing bodies is confined to limiting the application of a rule or regulation or some *portion* of the State Building Code Act. The removal of a given class of structures from the application of the entire Code is not permissible. Additionally, modification in application of the Code is justified only where local conditions logically and reasonably warrant. An entire abrogation of the State Building Code Act, as occurred here, is in conflict with the directive of RCW 19.27.060(1) that, in general, the State Building Code Act is to supersede all other codes containing less than the minimum performance standards and objectives of the component uniform codes. In addition, such action is also contrary to so much of RCW 19.27-.040, as *permits only such local amendments* "as shall be not less than the minimum performance standards and objectives enumerated in RCW 19.27.020, . . ."

The San Juan County Code excludes a class of buildings—residences built by their owners—from all of those portions of the State Building Code Act which relate to

standards of building construction. Under the County's scheme, any person is free to build a home without reference to any standard of construction whatsoever and, without inspection, to occupy it indefinitely and, after a 5–year period, even to convey it to others. The authority granted in the State Building Code Act for counties to limit the application of a rule, regulation or portion of the Building Code to specified classes of buildings must be read in light of the entire State Building Code Act, and the evident primary intent of the Code was to provide uniform minimum statewide standards of health and safety in the construction of buildings. Even if RCW 19.27.060(3) is read in isolation, the exemption of a class of family residences from the entire building codes is more than a limitation of "the application of any rule or regulation or *portion* of the state building code to include or exclude specified classes or types of buildings or structures . . ." (Italics mine.)

To remove a given class of buildings or structures from the entire operation of the State Building Code Act effectively undermines the foregoing statutory objectives. Yet where statutory language is susceptible of two constructions, one of which will carry out and the other defeat the manifest object of the statute, the former construction should be adopted. *Roza Irrig. Dist. v. State,* 80 Wn.2d 633, 497 P.2d 166 (1972). For this reason, I would hold that the authority granted local governments under RCW 19.27-.060(3) does not go so far as to permit the exemption of a class of buildings or structures from the entire State Building Code Act. Carried to its extreme, such interpretation would allow removal of all classes of structures within a given local jurisdiction from Building Code requirements.

### Use Classification

Since the challenged county code provisions do not attempt to prohibit the conveyance of owner–built residences, a classification of "owner–built residences" is not truly based upon either use or occupancy. The classification, rather, is purely based upon the identity of the

builder. As far as the county code is concerned, anyone in San Juan County may build himself a home every 5 years, to whatever standards he likes, and sell it to others. Given the well known mobility of the American public, it is safe to assume that, in a couple of decades, most of the owner–built residences now standing in San Juan County will be occupied by persons other than the owner–builders. There will be no easy way for potential occupants, fire and safety officials, or anyone else to distinguish those residences from those in the county built to the State's minimum performance standards.

### CONCLUSION

The broad policy of the State Building Code Act is to provide uniform standards to protect the health, safety and welfare of the public. Any exception to the statute should be strictly construed, so that the goals of the statute will not be defeated. Accordingly, a local governing body's amendments under RCW 19.27.060(3) are valid only if they are consistent with and promote these standards and goals. San Juan County's blanket repeal of the entire State Building Code Act is impermissible. Additionally, the classification created by San Juan County is not based on use or occupancy, but is purely based on identity of the builder. This is an impermissible classification and, hence, void.

I would affirm the trial court's holding that the San Juan County owner–built residence exemption is void as contrary to the provisions of the State Building Code Act.

ROSELLINI, J., concurs with DORE, J.