[No. 38842. En Banc. February 16, 1967.]

CARL H. BERGLUND et al., *Appellants*, v. THE CITY OF TACOMA, *Respondent*.*

\*Reported in 423 P.2d 922.

*Beresford & Booth* and *Murray, Scott, McGavick & Graves,* for appellants.

*Marshall McCormick, Robert R. Hamilton,* and *Paul J. Nolan,* for respondent.

HALE, J.—For many years, nearly 40 in some instances, the city of Tacoma's water division has furnished water to 13 homes outside the city limits in the northeast Tacoma area. Other residents of the area sought the same service at the same rates, and to that end 52.76 per cent of the property owners within the proposed area petitioned the city to extend Tacoma's water system into their district by means of a local improvement district.

Thereupon, the city council of Tacoma enacted ordinance No. 17894 creating LID No. 5408, a district wholly outside of but adjacent to Tacoma's corporate limits, as provided for in RCW 35.43.030, Laws of 1963, ch. 56, § 1, p. 424 (amended by Laws of 1965, ch. 7, § 35.43.030, p. 234). According to the stipulation of facts, the easterly boundary of the LID runs contiguous to and abuts on the westerly boundary of the city. Owners representing 31.15 per cent of the property within the proposed LID filed their objections, and, this protest being insufficient under RCW 35.43.180 to prevent the LID, the city proceeded with its plans to construct the extended water system.

To complete the project, the city intends to expend $5,495 from the water division's current expense fund for oversize 12-inch mains instead of installing the 8-inch mains customarily used in a project of this type. The remaining costs of construction and installation will come from assessments against the property within the district. Accordingly, of a total estimated cost of $30,998, the property owners within the district will pay $25,503, and the remaining $5,495, as indicated, will come from appropriations of water division revenue by the city council. Under the ordinance, all costs and expenses of the LID project will be paid by warrant, redeemable in cash at face value.

We first consider plaintiffs' contention that assessments imposed by a city on property outside its corporate limits violate the uniformity of taxation prescribed by Const. art. 7, § 1, which, in relevant part, provides:

All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only.

and Const. art 7, § 9, reading:

The legislature may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same.

■ Special assessments for local improvement are not deemed taxes within the uniformity provisions of the state constitution. In *Heavens v. King Cy. Rural Library Dist.*, 66 Wn.2d 558, 563, 404 P.2d 453 (1965), we noted the difference in constitutional effect between special assessments for local improvement and ad valorem taxes.

This case brings into sharp focus the constitutional difference between special assessments for local improvements inuring to the benefit of specific land and general ad valorem taxes levied for the benefit of the entire taxing district. A special assessment for local improvements is not a tax within the constitutional limitations upon the amount of taxation; nor is it a tax subject to the constitutional provision requiring uniformity and equality of taxation. *State ex rel. Frese v. City of Normandy Park*, 64 Wn.2d 411, 392 P.2d 207 (1964).

Therefore, since the special assessments imposed by the LID are not considered taxes under Const. art. 7, §§ 1, 9, even though the LID lies outside the city the assessments do not fall within the constitutional mandate prescribing uniformity of taxation as declared in those sections of the constitution.

The next question concerns the city's duty to establish a guaranty fund assuring payment of the LID warrants. By

statute, the guaranty fund derives from ad valorem taxes paid into the general fund. RCW 35.54.060. Although ordinance No. 17894 creating the LID did not expressly establish a guaranty fund to insure payment of the project warrants, it is inescapable that such a fund is either in existence now or must by statute be established. At any rate, we must determine (1) whether the fund engenders an unconstitutional want of uniformity in taxation and (2) whether mandatory establishment of a guaranty fund from in-city taxes for an out-of-city LID amounts to an unconstitutional giving or lending of money or credit from the city to private persons.

Expressed otherwise, appellants challenge the constitutionality of the LID on the ground that this mandatory guaranty fund, derived as it is from the city's general fund, securing the warrants issued in payment for labor and materials, (1) violates the uniformity in taxation clauses of Const. art. 7, §§ 1, 9, and (2) contravenes Const. art. 8, § 7, which prohibits the loaning of money or credit to or in aid of private persons, associations or corporations.

■ For many years prior to the enactment of Laws of 1963, ch. 56, § 1, p. 424, the statute under which Tacoma created LID No. 5408, cities had statutory powers to spend general tax money for improvements to their water systems outside the city limits. RCW 35.21.210 reads:

> Any city or town shall have power to provide for the sewerage, drainage and water supply thereof, and to establish, construct and maintain a system or systems of sewers and drains and a system or systems of water supply, within or without the corporate limits of such city or town, and to control, regulate and manage the same.

The local improvement guaranty fund to which appellants refer, however, is a comparatively recent innovation in public finance, having been established by RCW 35.54.010 through the enactment of Laws of 1965, ch. 7, p. 234, effective March 5, 1965, but deriving from a series of amendments to Laws of 1917, ch. 138, § 1, p. 576, and Laws of 1923, ch. 141, p. 454. See *State ex rel. Washington Mut.*

*Sav. Bank v. Bellingham,* 183 Wash. 415, 48 P.2d 609 (1935) for the statutory history of LID guaranty funds. The act of 1965, as did its predecessors, compels cities and towns to maintain a guaranty fund from general taxation to assure payment of their LID bonds and warrants to the extent of the fund, but limits taxation in any one year to 5 per cent of all outstanding obligations guaranteed by the fund. RCW 35.54.060.

The fund becomes liable for the LID warrants or bonds only after they have been defaulted. RCW 35.54.070. Warrants drawn upon the guaranty fund with which to pay defaulted LID warrants may not, as we have indicated, at any time exceed 5 per cent of the total outstanding obligations guaranteed by the fund. RCW 35.54.090. The fund, upon default of any LID warrants, then becomes subrogated to all rights which the warrant holder, directly or indirectly, may have possessed against the property assessed in the LID project. RCW 35.54.040. But the statute gives to LID assessments a lien on real estate paramount and superior to all liens except those for general taxes, and foreclosable in the same manner as other liens upon realty. RCW 35.50.010. Thus, the guaranty fund by right of subrogation is in turn secured by liens upon real estate within the LID. Consequently, ultimate liability of the guaranty fund becomes contingent upon a series of unlikely events and circumstances.

In the improbable event disbursements are made from the guaranty fund in the instant case, they will be repaid from assessments on real estate in the LID or in the final analysis from foreclosure of liens upon the specially benefited real estate. Accord: *Hansen v. City of Havre,* 112 Mont. 207, 114 P.2d 1053, 135 A.L.R. 1278 (1941). Thus, the fund's ultimate liability is remote and contingent.

We noted the remote and contingent nature of such liability in *Comfort v. Tacoma,* 142 Wash. 249, 252 Pac. 929 (1927), when this court was asked to decide whether the guaranty fund increased the debt of the city beyond its constitutional debt limit. Holding the guaranty fund to be a contingent liability and, therefore, not a debt, we said:

Specific provision is made by § 5 of the act that no holder of any bond shall have any claim whatsoever by reason of said bond against the city, except the right to payment from the special assessments collected and the guaranty fund. The question then naturally arises;—has the city unconditionally bound itself to pay all these unpaid bonds to the extent of at least five per cent of the total amount outstanding? It is apparent, of course, that the city has made no such promise. Its promise is to pay into the guaranty fund sufficient to make it equal to five per cent of the outstanding bonds, provided the local assessment funds prove insufficient. To state the matter more simply, the city agrees that if the property-holders, whose property has been assessed for the improvement, fail to pay in the regular assessments to cover the bonds when due, then the city will make payment for them to a certain extent by accepting the bonds from the holders and levying a tax for the money to pay the same. This will readily be seen to be only a contingent liability as far as the city is concerned, and in no sense a debt proper.

Analogous reasoning supported our decision in *State ex rel. Toll Bridge Authority v. Yelle,* 61 Wn.2d 28, 45, 377 P.2d 466 (1962), sustaining a one million dollar guaranty fund of toll bridge bonds through a reserve account. We said there that creation of that guaranty fund did not constitute a diversion of license fees and excise taxes derived from the sale of motor fuels to other than highway purposes in violation of Const. art. 2, § 40 (amendment 18).

In summary, although ad valorem taxes upon property within the city go into the city's general fund and pass therefrom into the LID guaranty fund, these general tax moneys are not expended unconstitutionally for the benefit of persons and property outside the corporate limits of the city because (1) the guaranty fund's liability is contingent and indirect, and (2) the city will own the extended water system. The city's general fund, via the guaranty fund, thus secures payment for the city's own water system.

Only in the event that (1) the LID assessments on real property within the LID fail to yield sufficient funds to pay for the project, and (2) foreclosure of the assessment liens fails to realize an amount of money equal to the assess-

ment, and (3) exercise of subrogation fails to realize amounts disbursed from the guaranty fund, does the LID guaranty fund ultimately respond with any money from the city's general fund. The law would not describe so unlikely and contingent a use of the general fund as employment of taxation lacking uniformity.

Correlated to the question of uniformity in taxation is the matter of expending general funds in aid of private persons. Const. art. 8, § 7, prohibits the city from loaning money or credit in aid of any private person, association, corporation or company. Both the contingent nature of the fund's liability and the fact that the city becomes owner of the water system extension, we think, removes the fund from Const. art. 8, § 7. *Comfort v. Tacoma, supra.*

On its completion outside the corporate limits of Tacoma, the extended water system, as we have noted, becomes the property of the city and not the property of owners of lands specially benefited by it. Neither the $5,495 to be spent by the city water division for installing 12-inch or oversize mains instead of the usual 8-inch mains nor establishment of the guaranty fund therefore constitutes an expenditure of public funds for private benefit, but rather use of general funds to construct, improve and extend a publicly-owned and operated municipal facility. Because the guaranty fund assures the city's credit and not that of the householders whose properties carry the assessment liens, it is neither a loan nor a gift of public money to private individuals within the constitutional prohibition of Const. art. 8, § 7.

Affirmed.

FINLEY, C. J., HILL, WEAVER, ROSELLINI, OTT, HUNTER, and HAMILTON, JJ., concur.

DONWORTH, J., concurs in the result.