[No. 41592. En Banc. April 29, 1971.]

THE STATE OF WASHINGTON, *on the Relation of John J. O'Connell, Petitioner*, v. PUBLIC UTILITY DISTRICT No. 1 OF KLICKITAT COUNTY *et al., Respondents.*

*Slade Gorton, Attorney General,* and *Robert F. Hauth, Assistant,* for petitioner.

*Houghton, Cluck, Coughlin & Riley* and *Paul Coughlin,* for respondents.

*Schumacher & Charette,* by *Robert L. Charette,* for intervenor.

WRIGHT, J.—This is an action for a declaratory judgment brought by the then attorney general to enforce the provisions of the Washington Constitution, article 8, section 7, as the same applies to the transactions hereinafter described. Respondent, Public Utility District No. 1 of Klickitat County, is a municipal corporation organized under the provisions of RCW 54.16. The powers of a public utility district are set forth in RCW 54.16.040 as follows:

A district may purchase, within or without its limits, electric current for sale and distribution within or without its limits, and construct, condemn and purchase, purchase, acquire, add to, maintain, conduct, and operate works, plants, transmission and distribution lines and facilities for generating electric current, operated either by water power, steam, or other methods, within or without its limits, for the purpose of furnishing the district, and the inhabitants thereof and any other persons, including public and private corporations, within or without its limits, with electric current for all uses, with full and exclusive authority to sell and regulate and control the use, distribution, rates, service, charges, and price thereof, free from the jurisdiction and control of the

public service commission, in all things, together with the right to purchase, handle, sell, or lease motors, lamps, transformers and all other kinds of equipment and accessories necessary and convenient for the use, distribution, and sale thereof: *Provided,* That the commission shall not supply water to a privately owned utility for the production of electric energy, but may supply, directly or indirectly, to an instrumentality of the United States government or any publicly or privately owned public utilities which sell electric energy or water to the public, any amount of electric energy or water under its control, and contracts therefor shall extend over such period of years and contain such terms and conditions for the sale thereof as the commission of the district shall elect; such contract shall only be made pursuant to a resolution of the commission authorizing such contract, which resolution shall be introduced at a meeting of the commission at least ten days prior to the date of the adoption of the resolution: *Provided further,* That it shall first make adequate provision for the needs of the district, both actual and prospective.

Respondent has not sold electrical appliances since 1940. However, since December of 1962, it has engaged in the business described in the trial court's finding of fact No. 2, as follows:

Beginning in December, 1962 and continuing to the present time, the District has carried on an Installment Sales Program under which it takes assignments of sellers' interests in conditional sales contracts from dealers or electrical contractors who have sold the electrical equipment covered by the contracts to customers of the District under which it acquires the seller's interest in the contract and in the chattel covered thereby. It pays to the dealers an amount equal to the balance after down-payment owing by the vendee under the contracts.

In October, 1967, the relator, who was then attorney general, instituted this action in the Superior Court of the State of Washington, for the County of Klickitat, seeking a declaratory judgment declaring the activities in question to be ultra vires and in violation of the Constitution of the State of Washington, and in particular, in violation of article 8, section 7. The intervenor, Washington Public Utility

Districts' Association, Inc., was permitted to intervene by the agreement of all parties. Upon a trial to the court, a judgment was rendered in favor of defendant. Relator thereupon appealed to the Court of Appeals and the judgment was affirmed. 2 Wn. App. 366, 469 P.2d 922 (1970).

 Relator petitioned for review in this court. The petition was granted.

Const. art. 8, § 7, reads as follows:

> No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.

If the language of the constitution is clear, there can be no interpretation thereof. This court said in *State ex rel. Swan v. Jones,* 47 Wn.2d 718, 289 P.2d 982 (1955), in part, as follows:

> [T]he authorities are numerous in support of the proposition that interpretation is improper if the particular constitutional language or provision is clear and unambiguous. In *United States v. Sprague,* 282 U. S. 716, 731, 75 L. Ed. 640, 51 S. Ct. 220, 71 A. L. R. 1381, the court said:
>
> "The Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning; *where the intention is clear there is no room for construction and no excuse for interpolation or addition.*" (Italics ours.)

To the same effect is *State ex rel. Lemon v. Langlie,* 45 Wn.2d 82, 273 P.2d 464 (1954), and *State ex rel. Troy v. Yelle,* 27 Wn.2d 99, 176 P.2d 459, 170 A.L.R. 1425 (1947).

On another occasion, this court has said in *State ex rel. State Capitol Comm'n v. Lister,* 91 Wash. 9, 156 P. 858 (1916):

> Constitutions being the result of the popular will, the words used therein are to be understood ordinarily in the sense that such words convey to the popular mind. The meaning to be given to the language used in such instru-

ments is that meaning which a man of ordinary prudence and average intelligence and information would give. Generally speaking, the meaning given to words by the learned and technical is not to be given to words appearing in a constitution. *Bronson v. Syverson*, 88 Wash. 264, 152 Pac. 1039; *Epping v. Columbus*, 117 Ga. 203, 43 S. E. 803; Cooley, Constitutional Limitations, p. 92; 1 Story, Constitution, § 451, p. 345; Black, Constitutional Law, p. 79. Other authorities might be cited in support of this rule of construction, but it is so generally recognized that further citation of authority hardly seems necessary.

■ The transaction in question is clearly a loan of the money of the respondent district. Respondent *presently* pays out money in exchange for the right to receive *future* repayment, together with interest. This court said in *Hafer v. Spaeth*, 22 Wn.2d 378, 384, 156 P.2d 408 (1945):

The word "loan" imports an advancement of money or other personal property to a person, under a contract or stipulation, express or implied, whereby the person to whom the advancement is made binds himself to repay it at some future time, together with such other sum as may be agreed upon for the use of the money or thing advanced. *State v. Larson*, 119 Wash. 259, 205 Pac. 373; *Embola v. Tuppela*, 127 Wash. 285, 220 Pac. 789; *First Bank of Cordova v. Tjosevig*, 138 Wash. 231, 244 Pac. 736; . . .

Respondent placed much importance upon its right to decline to buy any particular contract and that the contracts bought were good ones and were mostly large transactions. The constitution, however, makes no distinction; it prohibits all such transactions, good or bad, large or small.

We, therefore, hold the transactions in question to be in violation of article 8, section 7. Having made this determination, it is unnecessary to consider any of the other questions raised.

The decision of the Court of Appeals and that of the trial court must be reversed.

FINLEY, ROSELLINI, HALE, and STAFFORD, JJ., concur.

HUNTER, J. (dissenting)—I disagree with the majority's

conclusion that the practice of the PUD of Klickitat County, in taking assignments to certain conditional sale contracts for the sale of electrical equipment in consideration of paying the balance due to the vendors, constitutes a loan of money in violation of article 8, section 7, of the state constitution. The majority opinion overrules *sub silentio* recent decisions of this court interpreting that constitutional provision.

In *Washington Natural Gas Co. v. PUD 1*, 77 Wn.2d 94, 459 P.2d 633 (1969), we were faced with the same constitutional attack under facts analogous to those presented in the instant case. In that case the public utility district agreed to install at its own expense underground electric distribution systems and ornamental street lighting systems on the property of private land developers. The land developers agreed to pay the PUD for this service the sum of $225 per lot so improved. This amount could be paid over a 3-year period with interest at 6 per cent on the unpaid balance. If the developer were to erect a total electric dwelling on the lot within a 3-year period, the PUD agreed to allow the developer a $150 credit or payment on this $225 contractual payment owing. After carefully considering the operative details of the transactions, we concluded that the PUD's agreements to install at its own expense underground systems for a specific price to be paid in the future, did not constitute loans of money within the meaning of Const. art. 8, § 7, even though payment was to be made at a future time with interest, and in some instances, at a discount. We stated at pages 99-100 as follows:

> Thus, even though the developer will be allowed 3 years in which to earn the $150 credit, he not only pays a reasonable interest of 6 per cent on the unpaid balance, but actually delivers over to the PUD a substantial property in consideration of the agreement. There is, therefore, *no lending of money* or credit *for permitting deferment of the payment, but rather a genuine exchange of concrete, specific, measurable consideration.*
>
> . . .
>
> . . . Allowing the developer a reasonable period of

time in which to develop his project, sell his houses, persuade his buyers to accept *all electric houses*—during which time he pays reasonable interest on the $225 indebtedness per unit—is not, we think, a lending of credit or money by the PUD.

(Italics mine.)

In the instant case there is not only a genuine exchange of concrete, specific, measurable consideration in the form of personal property conveyed to the PUD, but also the indirect consideration accruing to the PUD through increased sale of its electric energy in Klickitat County.

In *Berglund v. Tacoma*, 70 Wn.2d 475, 423 P.2d 922 (1967), we held that a guaranty fund established from the city's general fund to guarantee the payment of warrants issued in financing an out-of-city LID project to extend water service did not violate Const. art. 8, § 7. This use of the city's general fund was held not to constitute a loan of money within the meaning of the constitutional provision since the fund's liability was contingent and indirect and the city would within a reasonable time become the owner of the water system extension.

The transactions in *Washington Natural Gas Co. v. PUD 1, supra*, and *Berglund v. Tacoma, supra*, both contain greater indicia of loans in the commonly understood sense than the instant transactions. The PUD in this case made no installations at its own expense in return for future repayment, together with interest or at a discount, nor did it appropriate funds for temporary use outside the district. The record shows unequivocally that the instant transactions consist in purchases of the vendors' interests in conditional sale contracts, the form and substance of which are not challenged by the plaintiff. The instant purchases do not constitute loans under the established case law of this state.

In *Oliver v. Electrical Prods. Consol.*, 59 Wn.2d 276, 278, 367 P.2d 618 (1961), we pointed out the difference between conditional sale contracts and loans as follows:

The conditional sale contract is a device recognized by statute to protect the seller of personal property which is

to be paid for in installments although possession is delivered to the conditional vendee. [Citations omitted.] However, it may not be used as security for a loan, for that is the office of a chattel mortgage.

In *Lahn & Simmons v. Matzen Woolen Mills*, 147 Wash. 560, 266 P. 697 (1928), we stated as follows at page 565:

A contract of conditional sale contemplates the relation of vendor and vendee.

. . .

In a contract of conditional sale the relation of debtor and creditor is not created. In *Holt Manufacturing Co. v. Jaussaud*, 132 Wash. 667, 233 Pac. 35, it is said:

"We have consistently held that, under the statutes of this state, no title whatever passes under a conditional sales contract of personal property, and that the relation of debtor and creditor is not created."

In *Smith v. Sherwood & Roberts, Spokane, Inc.*, 92 Idaho 248, 441 P.2d 158 (1968), the Supreme Court of Idaho, applying Washington law, held that there is still a difference under the law of this state, which is in accordance with the overwhelming weight of authority throughout the country, between bona fide conditional sales of personal property and loans of money. *See, Advance in Price for Credit Sale as Compared with Cash Sale as Usury*, Annot., 14 A.L.R.3d 1065 (1967).

Since bona fide conditional sales are not loans, mere purchases of the vendors' interests therein, as here, where no discount or refinancing is involved, clearly would not be in and of themselves loans. *Smith v. Sherwood & Roberts, Spokane, Inc., supra; Schauman v. Solmica Midwest, Inc.*, 283 Minn. 437, 168 N.W.2d 667 (1969); *General Elec. Credit Corp. v. State Tax Comm'n*, 231 Ore. 570, 373 P.2d 974 (1962).

The majority nevertheless concludes that the transactions of the PUD are commonly understood as loans. I disagree. To the contrary, these transactions are commonly understood as purchases, "the acquiring of title to or property in anything for a price." *See* Webster's Third New International Dictionary (1961). The nature of the trans-

actions is apparent from the assignment agreements, as follows:

For value received, the undersigned does hereby *sell,* assign, transfer, and set over, with recourse, *all its right, title and interest in and to the foregoing contract and any and all property described herein* . . .

(Italics mine.)

A vendor in a conditional sale contract has an interest in the property covered by the contract, due to the very nature of a conditional sale contract as expressed in *Lahn & Simmons v. Matzen Woolen Mills,* 147 Wash. 560, 564, 266 P. 697 (1928):

In a conditional sale contract, the absolute title to the property covered thereby remains in the vendor.

The interest of a vendor in a conditional sale contract covering personal property is personal property under the rule applied by this court in determining the nature of a vendee's interest as follows in *Tope v. Brattain,* 172 Wash. 556, 21 P.2d 241 (1933), at page 561:

The right or interest which one has in things personal is personal property. Bouvier's Law Dictionary, p. 2576.

The interest of a vendor in a conditional sale contract is a proper subject of sale. *State Bank of Black Diamond v. Johnson,* 104 Wash. 550, 177 P. 340, 3 A.L.R. 235 (1918); *see* 78 C.J.S. *Sales* § 569 (1952), at 284.

Since the instant transactions constitute purchases of personal property, they cannot at the same time be designated as loans.

The majority opinion relies upon the following statement from *Hafer v. Spaeth,* 22 Wn.2d 378, 384, 156 P.2d 408 (1945):

The word "loan" imports an *advancement of money or other personal property* to a person, under a contract or stipulation, express or implied, *whereby the person to whom the advancement is made* binds himself to repay it at some future time, together with such other sum as

may be agreed upon for the use of the money or thing advanced.

(Italics mine.)

The instant transactions, constituting purchases, lack essential elements of a loan set forth in the above-quoted statement. The purpose of the instant transactions is not to procure any future repayment, together with interest, from the dealers to whom the PUD pays its money. The requisite of a loan in the statement quoted by the majority from *Hafer v. Spaeth, supra,* that "the *person to whom the advancement is made* binds himself to repay it at some future time, together with such other sum as may be agreed upon for the use of the money or thing advanced" is clearly lacking. The dealers give present value for the money received from the PUD.

Nor are the instant transactions between the PUD and the dealers loans of money by the PUD to the dealers' customers, the contract vendees. Even if conditional sale contracts were to be considered loans from the dealers to *their customers,* the PUD does not engage in transactions with the contract vendees. It does not refinance the conditional sale contracts or extend the time for payment, as was the case in *Weitzman v. Bergstrom,* 75 Wn.2d 693, 453 P.2d 860 (1969). It does not advance money to the customers, either directly or through an agent as in *Busk v. Hoard,* 65 Wn.2d 126, 396 P.2d 171 (1964), or without its knowledge as in *Baske v. Russell,* 67 Wn.2d 268, 407 P.2d 434 (1965). There is no showing in the record that the dealers in making sales of their inventory are doing so as agents of the PUD or that the dealers' sales are cloaks to hide loans of money by the PUD to anyone. In short, the requisite of a loan in the statement relied upon by the majority from *Hafer v. Spaeth, supra,* of "an advancement of money or other personal property" to the contract vendees is wholly lacking.

The facts of the instant case call for application of the principles enunciated by the Supreme Court of Oregon in

*General Elec. Credit Corp. v. State Tax Comm'n,* 231 Ore. 570, 590-91, 373 P.2d 974 (1962), as follows:

> The purchase of conditional sales contracts is not a loan of money either in ordinary or legal understanding. . . . It was decided in these cases that the transaction "is a sale of a chose in action and does not involve a loan of money." . . .
>
> . . .
>
> . . . [W]e do not believe that the words "lending money" can be stretched far enough to include a financing company's purchase of conditional sales contracts from retail merchants. We assume the plaintiff's operations are designed to promote retail sales by enabling retail dealers to sell on liberal credit terms. The plaintiff could have accomplished the same result, one supposes, by making direct cash advances either to customers or to dealers selling on credit. But it did not do so, and the method adopted lacks the elements necessary to constitute a loan.

In considering the substance of the transactions involved in that case, a dissenting opinion questioned the applicability of the above-quoted principles where the purchaser was a financing company whose principal business was admittedly the use of money to gain interest through the purchase of conditional sale contracts. However, there should be no reservation in applying these principles in the instant case where the purchases of the contracts by the PUD is in furtherance of its principal business of providing economical electric energy.

I therefore am of the opinion that since the instant transactions are not loans of money of the defendant PUD within the meaning of that term as commonly understood or as enunciated in the statement quoted by the majority from *Hafer v. Spaeth, supra,* the departure of the majority from our previous decisions which interpret the meaning of article 8, section 7, of our state constitution, is not warranted in the instant case.

The further contentions of the plaintiff are without merit.

The judgment of the trial court and the Court of Appeals should be affirmed.

HAMILTON, C.J., McGOVERN, J., and RYAN, J. Pro Tem., concur with HUNTER, J.

Petition for rehearing denied September 8, 1971.