[No. 46625.   En Banc.   October 2, 1980.]

RICHARD LOUTHAN, *Appellant,* v. KING COUNTY,
ET AL, *Respondents.*

CHALMERS O. EKNESS, ET AL, *Appellants,* v. KING
COUNTY, *Respondent.*

*Richard Louthan*, pro se.

*Montgomery, Purdue, Blankinship & Austin*, by *John D. Blankinship*, for appellants Ekness, et al.

*Norm Maleng, Prosecuting Attorney, Richard H. Holmquist, Chief Civil Deputy*, and *Stephen A. Sewell, Susan R. Agid*, and *Stephen O. Kenyon, Deputies*, for respondents.

*George M. Mack* on behalf of Save Our Local Farmlands Committee, amicus curiae.

Hicks, J.—These cases, consolidated on appeal, were granted direct and accelerated review in this court because of an imminent deadline in the sale of certain King County general obligation bonds. The sale was dependent upon a resolution favorable to the County of the issues raised in these actions.

The King County Council desires to preserve certain open space and farmland in King County. To achieve this objective, the council proposed to sell County general obligation bonds and use the proceeds to purchase the "development rights"[1] of particular property if voluntarily offered to it. Appellant Louthan objected to this scheme as violative of Const. art. 8, § 7, which prohibits the loan or gift of public moneys.

In a separate action, appellants Ekness and Rogstad challenged the County's proposed sale of its bonds at an interest rate in excess of 8 percent per annum. In summary judgment proceedings, the trial court in each instance held for King County. The cases were consolidated and set for

---

[1] "'Development Rights' means an interest in and the right to use and subdivide land for any and all residential, commercial and industrial purposes and activities which are not incident to agricultural and open space uses.'" King County Ordinance No. 4341, § 3(3).

an expedited review before this court, sitting en banc, on May 28, 1980. In view of the urgency of the issues raised, the court entered an order on June 3, 1980, affirming the trial court as to Louthan and reversing as to Ekness and Rogstad. This opinion sets forth the court's reasons for its order.

King County Ordinance No. 4341, adopted June 18, 1979, provided for a special election seeking voter approval for a $50 million general obligation bond issue. The bonds were proposed to be issued in series over a period of years to mature serially commencing in 2 to 5 years extending over not more than 30 years. Section 12 of the ordinance provided in part:

> The Bonds shall be sold at public sale in the manner required by law, shall bear interest payable at such times . . . as hereafter authorized by the Council and as provided by law. . . . The exact date, form, terms, redemption options and maturities of each series of the Bonds shall be as hereafter fixed by ordinance of the Council.

Voter approval of the proposed bond issue was ultimately obtained at the election held November 6, 1979. On that date the effective maximum annual interest rate permitted by statute for such bonds was 8 percent. RCW 36.67.040. By authority of an ordinance enacted January 24, 1980, a sale of $30 million of the bonds at an 8 percent rate was attempted on February 25. No bids were forthcoming.

February 29, 1980, the County council adopted ordinance No. 4752 providing for the issuance of $30 million of bonds at a maximum annual interest rate of 12 percent. Bids for these bonds would be accepted until April 7. Notices to that effect were published at weekly intervals beginning March 12 and ending April 2.

Meanwhile, March 13, the state legislature, then in session, enacted Substitute House Bill 1090. The act amended RCW 36.67.040 to permit counties to pay a 12 percent effective maximum annual interest rate on general obligation bonds. The legislation contained an emergency clause

and it became effective April 1, 1980, the date it was signed by the Governor. Laws of 1980, ch. 145.

Several bids were received by King County for the proposed bonds. April 7, the County accepted a purchase offer at an effective annual interest rate of 8.4436 percent. The bonds were to mature in 20 years rather than 30 years as specified for the bonds previously attempted to be sold.

April 4, prior to acceptance of any purchase offer for the bonds, Ekness and Rogstad served King County with summons and complaint in their action. Additionally, a motion for a temporary restraining order was served on the County to enjoin the council from accepting any bid for the bonds on April 7. On that date (April 7), the plaintiffs' motion for a restraining order was denied by the King County Superior Court's presiding judge, and the County's motion for an expedited hearing of its summary judgment motion was granted.

Arguments on cross motions for summary judgments were heard April 14, 1980. King County's motion for summary judgment dismissal was granted and a formal judgment was entered April 18.

April 28, the Chief Justice of this court granted King County's motion for direct and accelerated review of both Ekness and Rogstad v. King County and Louthan v. King County, and consolidated the cases for appeal. Thereafter, on May 1, Ekness and Rogstad filed notice of appeal.

## LOUTHAN CASE

Richard Louthan initiated his action July 10, 1979, shortly after the King County Council adopted ordinance No. 4341. His basic theory was that the County could substantially achieve its purpose through use of its police power without the necessity of expending public funds. He alleged that the vigorous and ongoing programs by King County to preserve farmlands and open space were sufficient without the purchase of "development rights". Louthan concluded that the sale of general obligation bonds and use of the proceeds to purchase an intangible.

(development rights), which the County is by law already entitled to control, is a gift of public funds contrary to Const. art. 8, § 7.

Both parties moved for summary judgment. As previously noted, King County prevailed. Louthan's motion was denied and his action dismissed with prejudice. He appealed.

Ordinance No. 4341, presenting the program to purchase development rights of certain farm and open space land in King County (PDR program), was authorized under RCW 84.34.200–.220. The plan provides that owners of eligible property may apply to sell to the County the development rights in their land. The price paid for these rights may be no more than the difference between the value of the land, if it were confined to use for agricultural purposes or open space, and current market value of the land. Both values are to be determined by appraisal. In return for payment, the owner must agree to restrict the use of the land to agriculture and open space in perpetuity.

As noted above, Louthan opposes this plan as a giveaway of public funds violative of Const. art. 8, § 7. He asserts that no real consideration for the sale exists and thus, the transaction is a gift. Louthan vigorously expounded and urged the efficacy of this theme. He contends the principles to be followed in matters of this kind were early set forth in *Johns v. Wadsworth*, 80 Wash. 352, 354, 141 P. 892 (1914), as follows:

> The section of the constitution last quoted, in most express terms, prohibits a county from giving any money, property or credit to, or in aid of, any corporation, except for the necessary support of the poor and infirm. If the framers of the constitution had intended only to prohibit counties from giving money or loaning credit for other than corporate or public purposes, they would doubtless have said so in direct words. That agricultural fairs serve a good purpose is not questioned, but the constitution makes no distinction between purposes, but directly and unequivocally prohibits all gifts of money, property, or

credit to, or in aid of, any corporation, subject to the exception noted.

It is Louthan's position that a municipality may not provide benefits to private individuals except when they follow from necessary and proper governmental functions of that municipality. For cases demonstrating that principle, he cites *Berglund v. Tacoma,* 70 Wn.2d 475, 423 P.2d 922 (1967) (extension of city water system beyond municipal boundaries to service private individuals) and *Washington Natural Gas Co. v. PUD 1,* 77 Wn.2d 94, 459 P.2d 633 (1969) (PUD dispensing electrical power may construct a distribution system within a private development).

As a contrary example of a benefit not properly within the governmental function, Louthan cites *Port of Longview v. Taxpayers,* 85 Wn.2d 216, 533 P.2d 128 (1974) (under an authorizing statute, the port district sold revenue bonds to purchase leaseholds of pollution control equipment to be subleased back to original owners). The net effect of the procedure in *Port of Longview* was to give the private users the benefit of the port district's ability to obtain lower interest rates through the sale of tax exempt bonds. The risks to the port district were minimal and it incurred no net expense in carrying out the plan. Nonetheless, when the scheme was challenged, this court struck it down as contrary to Const. art. 8, § 7.

It is Louthan's contention that the King County plan is as flawed as the scheme to finance the purchase of pollution control equipment at reduced interest rates. Where the port district, in effect, provided a loan of public funds, King County is providing a gift. Here, King County does not get back its money and according to Louthan, it gets nothing in return for its payment that it does not already possess. We are unable to agree.

The wisdom of the King County plan is not for the consideration of this court—its constitutionality is. We hold the PDR program to be constitutional.

A legislative body of a home rule charter county has wide discretion in the methods that it selects to solve perceived

social problems within its jurisdiction. Here, the King County Council has identified loss of farm and open space lands as an ongoing adverse condition with which it must contend. For several years it has attempted to preserve its agricultural and open space lands by the use of zoning, tax benefits, and deferred road and utility assessments. As stated in the finding and declaration of purpose of ordinance No. 4341, it is the conclusion of the county council that these methods have not proved to be completely effective. In an effort to better achieve its desired results, the council devised the PDR program and submitted it to the voters for approval. With the foregoing, Louthan disagrees.

In the November 6, 1979, election, the bonds were authorized that would provide the funds to implement the plan. The basic thrust of Louthan's objection to the PDR program is that King County gets nothing for the funds that it expends.

■ Ordinance No. 4341 finds and concludes that zoning and other tools used by King County have not been adequate to preserve the farm and open space lands identified by the county council as necessary to be retained at their present intensity of use. The ordinance is entitled to a presumption of validity and the burden of showing otherwise rests heavily on the challenger. *Winkenwerder v. Yakima,* 52 Wn.2d 617, 328 P.2d 873 (1958); *Homes Unlimited, Inc. v. Seattle,* 90 Wn.2d 154, 579 P.2d 1331 (1978). That burden has not been met in this instance.

■■ For purposes of Const. art. 8, § 7, a gift is a transfer of property without consideration and with donative intent. Receipt of valuable consideration assures that a transaction is not a gift. *Lassila v. Wenatchee,* 89 Wn.2d 804, 576 P.2d 54 (1978). Although less than a fee interest, development rights are beyond question a valuable right in property. *Penn Cent. Transp. Co. v. New York,* 438 U.S. 104, 57 L. Ed. 2d 631, 98 S. Ct. 2646, *rehearing denied,* 439 U.S. 883, 58 L. Ed. 2d 198, 99 S. Ct. 226 (1978). Since the County acquires a valuable right for the funds it expends, there is no merit in the contention that the expenditure of

the funds for development rights is in reality a gift. The choice of method of acquiring or controlling such rights is within the ambit of legislative power of the county council. The decision of the trial court is affirmed.

## EKNESS AND ROGSTAD CASE

██ ██ In effect, Ekness and Rogstad argue that the voters of King County in approving ordinance No. 4341 were acting as a legislative body. All legislative bodies, which would include the voters when acting in a legislative capacity, are presumed to have full knowledge of existing statutes affecting the matter upon which they are legislating. *Sim v. State Parks & Recreation Comm'n*, 90 Wn.2d 378, 382, 583 P.2d 1193 (1978). In this instance, RCW 36.67.040 established the effective maximum interest rate that could be paid on county general obligation bonds at 8 percent per year. Thus, when the voters approved the sale of general obligation bonds under ordinance No. 4341, they were authorizing bonds that could bear an effective maximum yearly interest rate of only 8 percent, nothing more. We agree with the above contention.

Without further authorization from its voters, the general obligation bonds here concerned may not be sold by King County with a greater effective maximum annual interest rate than 8 percent. The fact that the state legislature, subsequent to the November 6, 1979, election which authorized the bonds, amended RCW 36.67.040 to permit county general obligation bonds to bear an effective maximum interest rate of 12 percent is of no consequence.

It follows that the purported sale by King County of its bonds on April 7, 1980, providing for an effective maximum yearly interest rate of 8.4436 percent must fail. The sale of general obligation bonds at such rate of interest was not authorized by the voters.

A number of cases were cited and discussed by both parties in their briefs and oral arguments to this court. Under the view we take of this matter, all the cited cases are either distinguishable or inapplicable.

We do not hold that the voters may not authorize a bond issue that would permit a different maximum interest rate than the statutory maximum existing at the time of the voter approval. What is authorized depends upon what is submitted to the electorate. Here, we hold that under the circumstances existing, an 8 percent effective maximum interest rate is all that was authorized.

Ekness and Rogstad have requested a reasonable attorney's fee for the services of their lawyer in the trial court and in this court. We agree that they are so entitled. While evidence and argument were advanced regarding an attorney's fee when the matter was heard here, we prefer to remand to the trial court for the fixing of this fee.

The case of Louthan v. King County is affirmed.

The case of Ekness and Rogstad v. King County is reversed and remanded for further proceedings not inconsistent herewith.

It is so ordered.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., concur.