FILED
COURT OF APPEALS
DIVISION II

2014 MAR 19 AM 8: 48

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SCOTT A. WALKER and FRED WAGNER, | |
| Appellants, | No. 44063-6-II |
| v. | |
| SCOTT SERVEN, a single man, | UNPUBLISHED OPINION |
| Respondent. | |

MAXA, J. – Scott Walker and Fred Wagner appeal the trial court's summary judgment dismissal of their claims against Scott Serven for money due on loans, securities fraud, and common law fraud arising from their investment in a project to renovate and operate a hotel in Mexico. We hold that summary judgment was appropriate because Walker and Wagner failed to show that there were genuine issues of material fact that (1) the parties entered into a loan agreement or any other agreement that would require Severn to refund the money Walker and Wagner invested, (2) Serven made a misrepresentation or engaged in fraudulent or deceitful conduct upon which Walker and Wagner reasonably relied sufficient to trigger liability for securities fraud, and (3) Serven knowingly made a false statement of material fact as required to recover for common law fraud. Accordingly, we affirm.

FACTS

In 2005, Serven, Scott Griffin, Rick Seddon, and Chris Johnston decided to purchase and renovate a dilapidated hotel in Loreto, Mexico. The four investors made the following capital contributions to the project: Serven: 55 percent; Griffin: 25 percent; Seddon: 10 percent; and Johnston: 10 percent. Serven and Griffin formed a Mexican corporation to own the hotel property. The investors all agreed to contribute additional capital to the project in proportion to their initial investments. They also agreed that once the project was completed, they would receive shares in the Mexican corporation in proportion to their total contributions.

Both Johnston and Seddon initially contributed $120,000 to the project. The document governing Johnston's interest provided:

> On the day of May 3, 2006 Chris and Alicia Johnston are hereby granted the right to purchase 10% of the Loreto Hotel Mission stock.
> The purchase price is base[d] on the final cost to purchase and remodel/build the Hotel. Receipt is hereby acknowledged for payment to date of $120,000.00.
> The balance is payable as the expenses occur. The purchase[r] hereby agrees to pay the share of expenses equal to their respective ownership within five business [days] of notice. After payment for this stock is received in full, the purchaser shall be at their own expense officially added to the Mexican corporation "Loreto Hotel Mission["].
> Profit and los[s]es shall be distributed to each member of the corporation based on their pro-rat[a] interest in the corporation.

Clerk's Papers (CP) at 474. Seddon signed[1] an identical agreement.

Soon thereafter, Johnston and Seddon decided to withdraw from the project. In 2006, Walker and Wagner became involved. The parties dispute whether Walker and Wagner purchased Johnston and Seddon's interests or whether their investments were made under a

---

[1] There are no signed copies of either agreement in the record. But Serven stated in a declaration that he at one time had documents bearing Johnston's and Seddon's signatures. And Walker and Wagner do not dispute that these agreements were signed.

separate agreement. Serven testified that Wagner acquired Seddon's interest in the corporation and that Walker acquired Johnston's interest. Seddon testified that Walker bought Johnston's interest and that Wagner purchased his interest. By contrast, Walker asserts that he made all payments to Serven's bank accounts. In his deposition, Serven testified that Walker had purchased his interest from Johnston. However, he acknowledged that there was a document stating that Walker had paid $120,000 to the entity, not Johnston.[2] The parties do not dispute that Wagner made an initial $120,000 payment directly to Seddon.

Walker and Wagner made a series of payments to the Mexican corporation between December 2005 and February 2010. Both Walker and Wagner stated that these payments went to an account controlled by Serven and in his name. The parties disputed the nature of these payments. Serven stated that, except for a $180,000 payment Wagner made in 2008 to cover Griffin's shortfall when he could no longer make capital contributions to the hotel, all of the payments were capital contributions. Walker and Wagner asserted that all of the payments were loans.

The parties had ongoing discussions about issuing stock to Walker and Wagner for their contributions to the corporation. Beginning in 2007, the parties began discussing the option of creating a United States entity to hold shares in the Mexican corporation. In a May 2007 e-mail to Walker and Wagner, Serven stated:

> Currently the most significant action we are taking is to form a Washington corporation that will hold all of the shares of stock in the Loreto Mission Hotel corporation in Mexico. All of the shares in the [M]exican corporation will be

---

[2] Serven appears to challenge the authenticity of this document. He stated that he "discovered that the Walkers created this document, signed my name to it and had the hotel buy [Johnston]'s interest back and then bought their interest from the hotel." CP at 343. When asked if it was true that the Walkers bought a 10 percent interest from the entity itself, Serven responded, "That's the way it's documented." CP at 343-44.

transfer[r]ed to the Washington corporation and we will all individually own shares in the Washington corp[oration] in accordance with our capit[a]l account.

CP at 181. The parties then engaged in ongoing discussions with attorneys and accountants to address the potential benefits to or consequences of having the shares held by a United States entity.

In September 2010, Wagner told Serven that he wanted to have all of the Mexican corporation's stock transferred to a United States corporation "as we all previously agreed to." CP at 206. Serven responded that Wagner could hold his stock in a United States corporation if he chose to do so, even if Serven chose to hold his in the Mexican corporation. In December 2010, Wagner wrote to Serven stating that he was "perplexed by your unilateral decision to change the process you, Walker, and I had agreed upon to facilitate the stock transfer." CP at 249. Serven responded that there were no beneficial reasons to hold the stock in a United States corporation and that his decision not to do that did not affect Walker and Wagner's ownership interest.

In October 2011, Walker and Wagner filed a complaint against Serven for money due on loans and for violation of the Securities Act of Washington (WSSA), chapter 21.20 RCW. They claimed that they had agreed to make advances with the understanding that the advances would become loans if the parties could not agree on the terms of ownership in the hotel. Walker and Wagner also made claims under the WSSA for the sale of unregistered securities and for securities fraud and a claim for common law fraud.

Serven filed a motion for partial summary judgment, asking that the trial court dismiss the money due on loans claim. He argued that Walker and Wagner failed to show any facts supporting the existence of a contract for a loan. In opposition to Serven's motion, Walker stated

4

that he and Wagner made a series of advances to Serven with the understanding that he and Wagner would become shareholders in a United States entity. When he and Wagner made the advances, he claimed that there was "a specific understanding and an agreement that these advances would not be for an investment in a Mexican entity." CP at 34. He further stated that "[t]here was also a clear understanding that if the parties could not reach agreement on the terms of the final entity that the advances would be returned to us." CP at 34. The trial court granted the motion and dismissed Walker's and Wagner's claims for money due on loans, concluding that Walker and Wagner had failed to show any factual basis for the existence of a loan.

Serven again moved for partial summary judgment, seeking dismissal of Walker's and Wagner's claims for sale of unregistered securities, securities fraud, and common law fraud. He argued that Walker's and Wagner's interests in the corporation in this case were not "securities" under the WSSA because they purchased their interests in one-on-one transactions with Johnston and Seddon, respectively; because the corporate shares were never publicly offered; and because there was no effort to solicit the sale of Johnston's or Seddon's interests to the public. Serven also claimed that there was no fraud because it was only after Walker and Wagner invested in the hotel that the parties began discussing the option of holding the shares in a United States entity. He further argued that the WSSA and common law fraud claims were barred by the three-year statute of limitations because Walker and Wagner should have reasonably discovered the alleged fraud when they purchased shares in 2006 and, at the very least, they should have discovered the alleged fraud in 2007 when Walker began working for Serven and took over the property's financial records.

Walker and Wagner responded that Serven had acted fraudulently because (1) he had initially agreed to create a United States entity to hold the property in Mexico, (2) he refused to

document the parties' transactions as the parties had agreed, (3) he unilaterally expanded the scope of the project by adding to the hotel's construction, (4) he asked the parties to sign false documents, and (5) he failed to provide the parties with meaningful financial information. Regarding the statute of limitations issue, Walker and Wagner argued that between 2005 and 2010, Serven repeatedly represented to them that he would create a United States entity. Therefore, they did not discover that he had failed to follow through on the promise until 2010 at the earliest.

Regarding the creation of a United States entity, Walker stated that it was Wagner's and his understanding that they would become shareholders in a United States entity in exchange for the advances they had made to the corporation. He stated that there was a clear understanding that the advances were made for the formation of a United States corporation, not a Mexican corporation, and that if the parties could not reach agreement on the terms of the final entity, the advances would be refunded. He stated that on June 1, 2011, it became clear to Walker and Wagner that Serven had refused to create a United States entity or to document the transactions as loans. Walker further stated that he received his interest in the corporation from Serven and no other investor, and that all of the money he paid on the project went into an account in Serven's name. Wagner submitted a similar declaration, but stated that he acquired all of his interest from Serven except for the first $120,000 that he paid to Seddon.

The trial court granted Serven's motion, stating in its oral ruling that Walker's and Wagner's investments were not securities, Serven did not sell any securities, and there was no securities fraud or common law fraud. The trial court further ruled, "If we get to the issue of the statute of limitations, [the claims] would be barred by the statute of limitations." Report of Proceedings (Aug. 31, 2012) at 21.

6

No. 44063-6-II

Walker and Wagner appeal the trial court's dismissal of all of their claims for money due on loans, securities fraud, and common law fraud.[3]

ANALYSIS

A.    STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Loeffelholz*, 175 Wn.2d at 271. "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment. *M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 579, 998 P.2d 305 (2000).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). A moving defendant can meet this burden by showing that there is an absence of evidence to support the plaintiff's case. *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991). The burden then shifts to the plaintiff to come forward with sufficient evidence to establish the existence of each essential element of the plaintiff's case. *Howell*, 117 Wn.2d at 625. If the plaintiff does not submit such evidence, summary judgment is appropriate. *Howell*, 117 Wn.2d at 625.

---

[3] Walker and Wagner do not contest the trial court's dismissal of their claim for sale of an unregistered security.

A nonmoving party must present more than "mere possibility or speculation" to successfully oppose summary judgment. *Doe v. Dep't of Transp.*, 85 Wn. App. 143, 147, 931 P.2d 196 (1997). "[A] non-moving party may not rely on speculation or on argumentative assertions that unresolved factual issues remain." *White v. State*, 131 Wn.2d 1, 9, 929 P.2d 396 (1997).

## B.     MONEY DUE ON LOANS CLAIM

Walker and Wagner argue that there are genuine issues of material fact regarding whether the contributions they made to the corporation were loans. We disagree.[4]

A loan is defined as follows:

> "The word loan imports an advancement of money or other personal property to a person, under a contract or stipulation, express or implied, whereby the person to whom the advancement is made binds himself to repay it at some future time, together with such other sum as may be agreed upon for the use of the money or thing advanced."

*Port of Longview v. Taxpayers of Port of Longview*, 85 Wn.2d 216, 225, 527 P.2d 263 (1974) (internal quotation marks omitted) (quoting *State ex rel. O'Connell v. PUD 1 of Klickitat County*, 79 Wn.2d 237, 241, 484 P.2d 393 (1971)). A borrower's promise to repay loaned funds is an essential element of a loan agreement. *Nat'l Bank of Commerce of Seattle v. Preston*, 16 Wn. App. 678, 680, 558 P.2d 1372 (1977).

---

[4] As a preliminary matter, the portion of Walker's and Wagner's brief devoted to their loan claim predominantly raises arguments and theories not argued in the trial court. They appear to argue that there was an issue of fact as to whether the parties merely had an "agreement to agree" and that they were entitled to restitution damages because the parties did not reach agreement and because Serven was unjustly enriched by their contributions to the hotel project. Br. of Appellant at 14. But below, Walker and Wagner argued only that they were entitled to a repayment of loans made to Serven and the hotel. They did not argue the theories of unjust enrichment and restitution that they now argue on appeal. Accordingly, we decline to address these arguments. RAP 2.5(a); *Karlberg v. Otten*, 167 Wn. App. 522, 531, 280 P.3d 1123 (2012).

Here, in a declaration in opposition to Serven's summary judgment motion on the loan claim, Walker described the nature of the payments as follows:

3. The advances were made with the understanding that Fred Wagner and I would become shareholders in a [United States] based entity in exchange for the advances. Scott Serven continued to indicate that he would cause the formation of such an entity. However, in spite of his promises to do so he eventually refused to do so.

. . . .

5. There was also a clear understanding that if the parties could not reach agreement on the terms of the final entity that the advances would be returned to us.

6. Thus far, Serven has failed and refused to document such transactions as a purchase of securities in a [United States] entity or as a loan, in accordance with the agreement of the parties.

7. On or about June 1, 2011, it became clear to [Walker and Wagner] that [Serven] would continue to refuse to either sell an equity interest in a [United States] based entity, or to document the transactions as loans.

CP at 375. Wagner submitted a nearly identical declaration.

Even when viewing these declarations in the light most favorable to Walker and Wagner, no reasonable minds could differ on the absence of any fact supporting the existence of a loan. Walker and Wagner clearly stated that they made advances to the project in exchange for shares in a corporation. According to their testimony, their advances would be refunded only if no agreement could be reached on the form of the final entity. As a result, the evidence shows that Walker and Wagner were making conditional investments in a corporation, not loans.

Further, Walker and Wagner presented no evidence that Serven agreed to a loan transaction. There was no evidence regarding independent written or oral loan agreements, whether and in what amount interest was to be charged on the loans, or the terms of repayment. And Walker and Wagner did not present any other evidence that a loan agreement had been made. In fact, Walker and Wagner expressly alleged that Serven *refused* to document the transaction as a loan.

We hold that Walker and Wagner failed to come forward with sufficient evidence to create a genuine issue of material fact regarding the existence of loans made to Serven. Accordingly, the trial court did not err when it granted Serven's motion to dismiss claims based on that theory.

## C. SECURITIES FRAUD CLAIM

Walker and Wagner argue that the trial court erred when it dismissed their securities fraud claims because, as a matter of law, their investments were securities and Serven was a seller of those securities and because there were genuine issues of material fact regarding whether Serven made misrepresentations regarding the formation of a United States entity. Even assuming, without deciding, that Serven was a seller of securities to Walker and Wagner, there is no evidence supporting Walker's and Wagner's claim that Serven made any misrepresentations or engaged in fraudulent or deceitful conduct upon which Walker and Wagner reasonably relied. Therefore, we hold that Walker's and Wagner's securities fraud claims fail.

### 1. Securities Act of Washington

The primary purpose of the WSSA is to protect investors from the speculative or fraudulent schemes of promoters. *Cellular Eng'g, Ltd. v. O'Neill*, 118 Wn.2d 16, 23, 820 P.2d 941 (1991). "To accomplish this purpose, the [WSSA] is interpreted broadly." *Kinney v. Cook*, 159 Wn.2d 837, 844, 154 P.3d 206 (2007).

RCW 21.20.010 provides a cause of action for securities fraud:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:
 (1) To employ any device, scheme, or artifice to defraud;
 (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Under the statute, a defendant is subject to liability if (1) the transaction constitutes a "security", (2) the defendant offers or sells the security, and (3) the defendant commits a fraudulent or deceitful act in connection with the offer or sale. *See Kinney*, 159 Wn.2d at 842. We assume without deciding that Walker and Wagner provided sufficient evidence to establish the first two elements and address only the third element.

2.    Misrepresentation or Fraudulent/Deceitful Act

Walker and Wagner argue that the trial court erred when it granted Serven's motion to dismiss their securities fraud claims because there was a genuine issue of fact regarding whether Serven engaged in a fraudulent or deceitful act in representing to them that a United States corporation would be formed. We disagree.

In order to recover for securities fraud under RCW 21.20.010, "the purchaser of a security must prove that the seller and/or others made material misrepresentations or omissions about the security, and the purchaser relied on those misrepresentations or omissions." *Stewart v. Estate of Steiner*, 122 Wn. App. 258, 264, 93 P.3d 919 (2004). The purchaser need not show an intent to defraud. *Go2Net, Inc. v. FreeYellow.com, Inc.*, 126 Wn. App. 769, 775, 109 P.3d 875 (2005), *aff'd*, 158 Wn.2d 247, 143 P.3d 590 (2006). A material fact is one to which a reasonable person would attach importance in determining his or her choice of action in the transaction in question. *Aspelund v. Olerich*, 56 Wn. App. 477, 481-82, 784 P.2d 179 (1990). The purchaser's reliance must be reasonable under the circumstances. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 175 Wn. App. 840, 868, 309 P.3d 555 (2013), *review granted*, 316 P.3d 495 (2014).

11

No. 44063-6-II

Here, Walker and Wagner argue that Serven represented that their investments would result in the issuance of stock in a United States corporation. Walker and Wagner cite an e-mail from Serven in 2007, in which he stated:

> Currently the most significant action we are taking is to form a Washington corporation that will hold all of the shares of stock in the Loreto Mission Hotel corporation in Mexico. All of the shares in the [M]exican corporation will be transfer[r]ed to the Washington corporation and we will all individually own shares in the Washington corp[oration] in accordance with our capit[a]l account.

CP at 181. There also was evidence that Serven's lawyer had created a certificate of formation and operating agreement for a Washington limited liability company.

Walker and Wagner also point to ongoing e-mail discussions in 2010 between the investors and their lawyer and accountant regarding the feasibility and practicality of creating a United States corporation. The 2010 e-mails do not include any statements by Serven that a United States entity would be formed, but they raise an inference that the parties believed that such an entity might be formed. Walker and Wagner argue that Serven's representations regarding a United States corporation constituted securities fraud because he ultimately decided not to form a United States corporation. They also state in declarations that they relied on Serven's representation that he would create a United States entity when they made payments to

12

No. 44063-6-II

him.[5]

However, Walker and Wagner provided no evidence that Serven made any misrepresentation regarding formation of a United States corporation. A misrepresentation requires a false statement regarding an existing fact, not a statement of a future intention. *See Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 182, 876 P.2d 435 (1994) (negligent misrepresentation claim). Walker and Wagner have produced no evidence suggesting that Serven never intended to create a United Stated corporation. Even viewing the evidence in a light most favorable to Walker and Wagner, the record shows no more than that Severn initially may have intended to create a United States corporation but later decided against that course of action after consulting with lawyers and accountants.

Further, the evidence does not reflect that Serven engaged in any deceitful or fraudulent conduct. At best, the parties had an agreement that they would attempt to agree on the structure of the corporation that would own the hotel. The fact that Walker and Wagner wanted to form a United States corporation does not somehow convert Serven's business decision not pursue that option into a fraudulent act. The evidence shows only that sophisticated businessmen who had previously worked together evaluated a number of options and then disagreed as to the

---

[5] Walker and Wagner cite additional material in the record that does not support their position. First, they cite two unsigned documents titled "Agreement Among Investors" that would have increased Serven's ownership interest in the Mexican corporation after he made additional capital contributions when Griffin was unable to pay his portion in 2008. CP at 160-64, 166-71. But these documents make no reference to the formation of a United States entity. Second, Walker and Wagner cite to a diagram of the entities controlling the hotel and a written document to the same effect, both of which include a United States entity that, they argue, controlled the project. However, the United States corporation, which Serven ultimately formed in 2008 in Wyoming, was for the sole purpose of loaning funds to the Mexican corporation, not for holding title to or managing the property.

appropriate course of action. These facts are insufficient to avoid summary judgment on the WSSA claim.

Finally, the evidence shows that Walker and Wagner could not reasonably have relied on Serven's statements or conduct when making contributions to the project. Again, the parties had no more than an oral agreement to agree regarding the corporate structure, and all the parties were exploring whether forming a United States corporation was advisable. And the evidence indicated that Griffin, the other investor, did not approve of forming a United States corporation. Under these circumstances, it was unreasonable for Walker and Wagner to rely on such a vague understanding between the parties.[6]

We hold that there were no genuine issues of material fact regarding whether Serven made misrepresentations or engaged in any deceitful or fraudulent conduct regarding creation of a United States entity to hold the shares in the Mexican corporation and whether Walker and

---

[6] We note that a violation of RCW 21.20.010 requires "proof of the seller's material, *preclosing* misrepresentation or omission." *Go2Net*, 158 Wn.2d at 253 (emphasis added). The earliest alleged misrepresentation Serven made regarding the Washington corporation was in 2007, two years after Walker and Wagner made their first payments. We need not decide whether conduct after Walker and Wagner began contributing to the project could support a WSSA claim.

Wagner reasonably relied on those representations in making their contributions to the project.[7]
Accordingly, the trial court did not err in granting summary judgment on the securities fraud
claim.[8]

D.    COMMON LAW FRAUD CLAIM

Walker and Wagner argue that the trial court erred when it dismissed their common law
fraud claim because there was a genuine issue of material fact as to whether Serven's acts were
fraudulent. We disagree.

The standard for common law fraud is more stringent than for securities fraud. For
instance, for common law fraud the plaintiff must prove an actual intent to deceive. *Go2Net*, 126
Wn. App. at 775. To support a claim for common law fraud, the plaintiff must prove by clear,
cogent and convincing evidence:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's
> knowledge of its falsity; (5) intent of the speaker that it should be acted upon by
> the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the
> truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages
> suffered by the plaintiff.

*Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996).

---

[7] Walker and Wagner also argue that Serven violated the WSSA because he failed to disclose his
decision to expand the project's scope and that "Serven asked [Walker and Wagner] to sign and
backdate proxies with regard to the Mexican corporation that were materially false and
deceptive." Br. of Appellants at 23-24. But Walker and Wagner do not attempt to show any
alleged misrepresentation or omission was material or deceitful and they do not attempt to show
that they relied on the misrepresentations or omissions. They also argue that Serven violated the
WSSA because he failed to record their capital transfers and failed to provide them with
financial information, but fail to cite any evidence in the record supporting the alleged material
issues of fact. Accordingly, we decline to address these arguments further.

[8] Because we hold that the trial court properly dismissed Walker's and Wagner's securities fraud
claims, we need not address whether the statute of limitations barred these claims.

When reviewing a claim on summary judgment for which the burden of proof is clear, cogent, and convincing evidence, "we must determine whether, viewing the evidence in the light most favorable to the nonmoving party, a rational trier of fact could find that the nonmoving party supported his or her claim with clear, cogent, and convincing evidence." *Woody v. Stapp*, 146 Wn. App. 16, 22, 189 P.3d 807 (2008). In other words, "the challenging party must offer evidence establishing a prima facie case supporting the claim or defense." *Woody*, 146 Wn. App. at 22.

We hold that the evidence Walker and Wagner presented at summary judgment does not withstand the heightened burden for common law fraud. First, Walker and Wagner did not allege that Serven made a representation of an *existing* fact. Instead, they alleged that he misrepresented his intention to create a United States entity in the future. Second, nothing in the record established that the representations were false when made or that Serven knew that the representations were false. When he made the representations, Serven may well have intended to create a United States entity. Third, Walker and Wagner did not show that they had a right to rely on what essentially was an "agreement to agree" with regard to the issuance of stock in a United States corporation.

Walker and Wagner failed to submit evidence sufficient to create a question of fact regarding common law fraud, particularly under the clear, cogent and convincing standard. Accordingly, we hold that the trial court properly granted summary judgment on Walker's and Wagner's claim for common law fraud.

No. 44063-6-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

PENOYAR, J.P.T.

LEE, J.

17